Getz *v.* Freed, Appellant.

Argued April 12, 1954. Before STERN, C. J., STEARNE, JONES, BELL, CHIDSEY, MUSMANNO and ARNOLD, JJ.

*Joseph W. Henderson,* with him *Harrison G. Kildare* and *Rawle & Henderson,* for appellant.

*John J. Dautrich,* with him *White, Williams & Scott,* for appellee.

OPINION BY MR. JUSTICE BELL, May 24, 1954:

Plaintiff recovered a verdict in the sum of $5,000. Defendant's motion for judgment non obstante veredicto and for a new trial was dismissed, and from a judgment entered on the verdict defendant has taken this appeal.

On September 8, 1951 plaintiff, defendant and two other men played a (golf) foursome at the Lebanon Country Club. After completing 18 holes they decided to play a few more holes, and no caddy being available they carried their own bags. Defendant, having the highest score on the 18th hole, was the last to drive on the Number 1 or 19th hole. Defendant "hooked" his first drive out of bounds—a distance of approximately 30 to 35 yards over a low stone wall which formed a parallel boundary line approximately 30 feet to the left of the fairway. Defendant naturally played

a second drive—another very bad shot, which rolled about 40 yards from the tee into the fairway. Plaintiff and his partner offered to look for and pick up defendant's first ball. Defendant turned on the tee as if to walk over to his bag and plaintiff and his partner walked off the tee to find defendant's first ball. Neither plaintiff nor his partner paid any further attention to the defendant, but walked toward the boundary line. When they had reached the stone wall at approximately the place where defendant's first drive had gone out of bounds plaintiff heard someone call "Look out, Charlie." At about the same split second plaintiff was hit on the back of the head by a ball which defendant had just driven from the tee. It is obvious that defendant violated a rule of the game and a custom known to all golfers, namely, he had to play his second drive and was not permitted to drive a third ball. Defendant contends that plaintiff assumed the risks of the game and likewise that he was guilty of contributory negligence in failing to watch alertly for defendant's next shot. Defendant admittedly gave no notice or warning of his intention to play a third ball from that tee. Under all the facts in this case defendant's contentions of assumption of risk and contributory negligence are devoid of merit.

A person who plays golf assumes some risks of the game. Cf. *Benjamin v. Nernberg,* 102 Pa. Superior Ct. 471, 157 A. 10; *Douglas v. Converse,* 248 Pa. 232, 93 A. 955. For example, he knows that every star sometimes, and every "dub" ofttimes, hooks or slices, and that when he is playing on a parallel hole or on a parallel area of ground he may be struck by a wild shot. He also knows that if his opponent or partner discovers his ball is out of bounds and returns to replay the shot and he intentionally remains within the orbit or possible orbit of the replayed shot, he risks

being hit and injured. While few players know all the rules of golf, there are three rules and customs which all golfers know: (1) It is the duty of every player to give timely and adequate warning—usually by the word "fore"—of a shot which he is about to make and which he has reasonable grounds to believe may strike another player, caddy or spectator, either on the same hole or on a different hole—see *Brusis v. Henkels*, 376 Pa. 226, 230, 102 A. 2d 146; (2) a player assumes the risk or is guilty of contributory negligence and want of due care if he intentionally or carelessly walks ahead of or stands within the orbit of the shot of a person playing behind him; and (3) it is negligence for a player to drive, without warning, another ball when his prior drive is on the fairway or apparently within bounds.

This is a very unusual case. Defendant was undoubtedly guilty of negligence in driving a third ball when his second drive was in the fairway, and he failed to warn the rest of the foursome of his intention to hit a third drive. If defendant had played his second drive, plaintiff was *behind* defendant's ball (although widely to the left) and consequently outside the orbit of defendant's next shot, so that it would have been impossible for defendant to hit plaintiff if he had played his second ball. Under these facts the lower Court could not legally hold and the jury could not find that plaintiff knowingly placed himself in a position of danger or assumed the risk of being hit or was guilty of contributory negligence. We find no error in the Court's charge to the jury or its refusal to charge on the points of the assumption of risk and contributory negligence submitted by defendant.

Defendant further contends that the evidence to prove loss of earnings for the 20 months of plaintiff's disability was inadequate and inadmissible.

Following the accident plaintiff suffered from serious headaches, dizzy spells and nausea. He was unable to attend to his business for 7 weeks after the accident; during the following 6 weeks he was able to spend only a few hours a day in the office; and from September 8, 1951 to January 1, 1952 he was unable to actively solicit new business. During the entire year of 1952 he was able to devote only a portion of his time to his business, being forced at times to discontinue his activities because of recurrent spells of headaches, dizziness and nausea. He testified that it was impossible for him to state with certainty the amount of time devoted to his business during 1952 but he estimated that he spent approximately 50 to 60 per cent of the time he would have spent had he not been injured. Near the end of 1952 he was riding in an automobile which was hit from behind by another automobile with the remarkable result that the jar cleared up plaintiff's condition and his disability ended.

The jury returned a verdict for plaintiff in the total sum of $5,000., made up of medical expenses $335., compensation for pain and suffering $1,000., and $3,665. "compensation for loss and/or impairment of plaintiff's earning capacity."

Plaintiff claimed that he lost as a result of the accident (1) commissions on first year premiums on policies sold directly by him; (2) "override" on commissions of agents who worked under his supervision; and (3) commissions on renewals. Plaintiff was a general agent for Franklin Life Insurance Company. He received no fixed salary but only commissions, as above set forth. Plaintiff was unable to produce original company records in respect (a) to "override" on agent's commissions and (b) commissions on renewals; and the trial Judge therefore limited his claim to losses on commissions on first year premiums. In order to prove his

claim for loss of commissions on first year premiums on policies saleable directly by him, plaintiff produced original company records showing the amounts of monthly and quarterly commissions on new policies sold directly by him for the years 1950, 1951 and 1952 (the company had no records for prior years). These records covered the period of his incapacity and approximately $1\frac{3}{4}$ years prior thereto.

Defendant contends that plaintiff's business is of such a nature that commissions necessarily fluctuate and therefore evidence of commissions earned for the period prior to plaintiff's incapacity afforded no legal basis for ascertaining damages or losses resulting from this injury. We disagree with the defendant's contention. While the exact amount of loss of commissions or fees or earnings from personal services can rarely ever be proved with certainty, it is indisputable that plaintiff suffered some loss of earnings. The best and probably the only evidence which plaintiff could have possibly produced was the record of his prior earnings and under such circumstances that is sufficient.

In *Betterman v. American Stores Co.*, 367 Pa. 193, 80 A. 2d 66, this Court, quoting from *Lach v. Fleth*, 361 Pa. 340, 352, 64 A. 2d 821, said (p. 207) : " 'The law does not require that proof in support of claims for damages or in support of claims for compensation must conform to the standard of mathematical exactness. In Western Show Co., Inc. v. Mix, 308 Pa. 215, 162 A. 667, we held that evidence in support of a claim for damages *was sufficient "if it afforded a reasonably fair basis"* for calculating the plaintiff's loss. . . . If the facts afford a reasonably fair basis for calculating how much plaintiff is entitled to such evidence cannot be regarded as legally insufficient to support a claim for compensation.' See also to the same effect, Weinglass v. Gibson, 304 Pa. 203, 155 A. 439; and Osterling v. Frick, 284 Pa. 397, 131 A. 250."

486

In *Osterling v. Frick,* supra, an architect brought an action in assumpsit for his services. The owner's counterclaim for delay was allowed in the sum of $40,000. The Court said (pp. 403, 404) : ". . . While damages in such case cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy. As stated by Judge HENDERSON, in Hoober v. New Holland, W. Co., 43 Pa. Superior Ct. 262, 266 : 'Where it is proved that damage has resulted from an injurious trespass and the only uncertainty is as to the exact amount thereof such uncertainty is not ordinarily ground for refusing to allow any damage at all if the evidence furnish a basis from which a reasonable calculation can be made: 3 Sutherland on Damages, section 672; Hooper v. Story, 155 N. Y. 171'; and to like import is Hartman et al. v. Incline Plane Co., 159 Pa. 442; McElroy v. Filby, 83 Pa. Superior Ct. 47; De Grazia v. Piccardo, 15 Pa. Superior Ct. 107. In such case mathematical exactness is not required : Pierce v. Lehigh Valley Coal Co. (No. 1), 232 Pa. 165; Eckman v. Lehigh & Wilkes-Barre Coal Co., 50 Pa. Superior Ct. 427; and see Hetzel v. Baltimore & Ohio Railroad, 169 U. S. 27; Priest v. Nichols, 116 Mass. 401; Allison v. Chandler, 11 Mich. 542. . . . What the law requires is sufficient data from which the damages can be assessed with reasonable certainty and not merely upon conjecture : Macan v. Scandinavia Belting Co., 264 Pa. 384."

Plaintiff's proof of loss of earnings was sufficient under these authorities to take the case to the jury and to sustain its verdict.

Judgment affirmed.