Rasmussen, Appellant, v. Richards, Respondent.

*March 3—April 7, 1959.*

For the appellant there was a brief by *Brazeau & Brazeau* of Wisconsin Rapids, and oral argument by *Richard S. Brazeau.*

For the respondent there was a brief by *Schmidt & Thibodeau* of Wisconsin Rapids, and oral argument by *Leon S. Schmidt.*

CURRIE, J. The plaintiff raises the following issues on this appeal:

(1) Was the defendant guilty of negligence as a matter of law in driving his ball when he did in view of the rule of the golf course which read, "Do not drive until players ahead are well out of driving range?"

(2) Was the defendant negligent as a matter of law in failing to give the plaintiff timely warning?

(3) Is the amount of $2,500 awarded by the jury as damages for the plaintiff's injuries so low as to indicate perversity, passion, or prejudice?

(4) Is there any basis in the law, or in the evidence presented, which will sustain the jury's finding that the plaintiff assumed the risk of the accident?

### Golf Course Rule.

The testimony of one of the other members of the defendant's foursome was that the defendant normally drove a ball

off a tee with his driver a distance of 170 to 190 yards. The plaintiff measured the distance between the No. 3 tee and the place where the plaintiff testified that he was standing when hit and found the same to be 475 feet. However, other witnesses placed plaintiff's position when struck on the No. 4 tee, which would have made such distance slightly greater. However, there is no doubt that the plaintiff was within the defendant's normal driving range of from 170 to 190 yards. Because of this, the plaintiff contends that the defendant violated the golf-course rule, "Do not drive until the players ahead are well out of driving range;" and that this rule constituted negligence as a matter of law.

We find it unnecessary to determine whether the violation of a golf-course rule of this nature constitutes negligence as a matter of law. For the purpose of this appeal only, we shall assume that it does.

The key word in the rule is *"ahead."* The testimony is in direct conflict as to whether *"ahead"* was restricted to the area comprising the hole being played or whether it included adjoining fairways, tees, and greens. However, the testimony of several witnesses is uncontradicted that it was customary for players on the course to drive off No. 3 tee when other players were occupying No. 4 tee. Even the plaintiff's expert witness Kuklinski, a golf professional of a nearby course, did not dispute this but merely testified that he customarily shouted "fore" as a warning before hitting his ball if there were any players present within an angle of 45 degrees. We deem such practical construction of this course rule by the players had the effect of making the rule inapplicable to a situation where a player was driving off No. 3 tee and the only persons within driving range were on, or in close proximity to, tee No. 4.

It is our conclusion that the defendant did not breach the golf-course rule in question, and, therefore, cannot be held negligent as a matter of law on the theory contended for by the plaintiff.

*Failure to Give Proper Warning.*

The issue, of whether the defendant was negligent with respect to giving proper warning to the plaintiff, was submitted to the jury and answered adversely to the plaintiff. Because of this, it is our duty to construe the evidence most favorably in support of sustaining such finding. *Henthorn v. M. G. C. Corp.* (1957), 1 Wis. (2d) 180, 184, 83 N. W. (2d) 759. This requires that we accept as true the testimony that the plaintiff and Navis were on No. 4 tee when the defendant drove his ball from No. 3 tee.

There is testimony by a number of witnesses that it was not customary for a player in defendant's situation in such circumstances to shout "fore" before driving his ball, but only to do so when it could be observed that the ball was slicing so as to carry it to the right in the direction of No. 4 tee. It is undisputed that the defendant did give such latter warning and that Navis heard it and "ducked." Kuklinski, called by the plaintiff, testified that he, if confronted with such a situation, would have shouted "fore" upon teeing up his ball and before driving it. However, Kuklinski's testimony was impeached by the testimony of other golfers, who had played with him in the past and testified they had never observed him follow such practice.

We deem that there was ample credible evidence to sustain the finding of the jury that the defendant was not negligent with respect to giving the plaintiff proper warning.

In spite of the support in the evidence for this finding of the jury, the plaintiff contends that the defendant was guilty of negligence as a matter of law in not shouting "fore" before driving his ball from the No. 3 tee instead of waiting until the ball was in flight, and had commenced to slice, before doing so. In support of such contention the plaintiff stresses testimony of the defendant that on numerous occasions he had sliced his ball when driving from the No. 3 tee. However, such testimony must also be considered in the light of

the further testimony that he played the course six or seven times a week. Also apposite is the following extract from *Page v. Unterreiner* (Mo. 1937), 106 S. W. (2d) 528, 533:

"Golf is a game of exact precision, requiring perfect co-ordination of mind and body. The slightest deviation of the club head from a perfect position, during the stroke or swing, will cause the golf ball to do many peculiar things. It is apt to slice, it is apt to pull or hook, or travel straight at an angle, with neither hook nor slice. It does not require an intimate knowledge of the principles of geometry to know that a slight deviation of the club head may send the ball from the tee at an unusual angle. No player has ever achieved such perfection in the game that he does not occasionally hook or slice a ball. With ordinary players, as the evidence shows in this case, this frequently takes place."

In support of his contention, that defendant was guilty of negligence as a matter of law in failing to shout "fore" before striking the ball, the plaintiff quotes the following statement from *Getz v. Freed* (1954), 377 Pa. 480, 483, 105 Atl. (2d) 102, 103:

"It is the duty of every player to give timely and adequate warning—usually by the word 'fore'—of a shot which he is about to make and which he has *reasonable grounds to believe* may strike another player, caddy, or spectator, either on the same hole or on a different hole." (Emphasis supplied.)

We decline to interpret the above-quoted rule so as to require that we hold as a matter of law that the defendant had "reasonable grounds to believe" his ball might slice and strike the plaintiff. We are of the opinion that under the circumstances of this case the question, of whether he had reasonable grounds to believe that his ball might strike the plaintiff, presented a question of fact for the jury to determine.

For a comprehensive bibliography of the cases dealing with the question of the negligence of a golfer in failing to give warning of an impending shot, see *Boynton v. Ryan* (3d Cir. 1958), 257 Fed. (2d) 70, 72. However, in most of the

cases therein cited the appellate court was dealing with a situation where there had already been a finding below either by a jury, or by the trial court sitting without a jury, that the defendant was negligent. We have examined such cited cases. In none of them was a judgment for the defendant below reversed on the ground that the defendant had been guilty of negligence as a matter of law in failing to give warning of an impending shot. We decline to so hold in a situation where the injured plaintiff was neither within the area appertaining to the hole being played nor in the approximate intended line of flight of the ball.

### Perversity of Verdict.

The plaintiff contends that he is entitled to a new trial because the verdict was the result of perversity, passion, or prejudice. Such claim is based upon the fact that the jury awarded only $2,500 for the plaintiff's personal injury.

We think it highly significant that the learned trial judge on motions after verdict approved the jury's finding as to damages. He made this comment with respect thereto:

"I don't think there was anything conclusive about the damages, except that the plaintiff was hit in the head with a golf ball and suffered some headaches. Under the evidence as produced, I think the jury had a right to determine what, if any, damages besides those headaches actually were suffered by the plaintiff."

The accident happened on a Thursday and the plaintiff did not consult a physician until the following Monday. The treatment and medication prescribed by plaintiff's attending physician were rest and the taking of aspirin. Of the $149 allowed for medical expenses in the verdict, $60 thereof was for four days' room and board at the Wisconsin Neurological Foundation at Madison from September 16 through September 19, 1956.

Plaintiff is the owner and operator of an automobile service station. He testified that he was confined to his bed "possibly" three weeks to a month following the accident. He got up occasionally to go and see his physician and would then also stop at his service station. The first work he did at the station, according to him, was late in November, 1956, and then only "for an hour or so" per day. It was the latter part of February, 1957, before he resumed full-time work at his station.

The plaintiff's net earnings for 1954 were $8,700; for 1955, $12,098.69; for 1956, $328.41; and for 1957, $6,357.53. However, his gross sales of his station were practically the same for each of the last three years of such four-year period, the same being as follows:

| | |
|---|---|
| 1955 | $107,560.67 |
| 1956 | 106,724.65 |
| 1957 | 107,202.82 |

His purchases of merchandise in each of such three years aggregated:

| | |
|---|---|
| 1955 | $ 85,772.16 |
| 1956 | 96,702.96 |
| 1957 | 84,621.88 |

The record does not disclose the amount in dollars of the inventory of merchandise on hand at any time.

The amount paid out by plaintiff for wages of employees for the period of August 2, 1956, to December 31, 1956, was but $1,144.47 greater than for the corresponding period in 1955. In 1956, which is the year in which the plaintiff contends he suffered a loss of business net profits as a result of the accident, the plaintiff started two new separate little businesses. The starting and operation of these two other enterprises, therefore, may have had something to do with his loss of net earnings in 1956 as may also the much-larger pur-

chases of merchandise in that year over the year before and the year after.

Upon this inconclusive record as to claimed loss of net profits, we cannot determine that the $2,500 awarded by the jury as damages for the plaintiff's personal injury was so low as to indicate perversity, passion, or prejudice.

### Assumption of Risk.

Because of our holdings with respect to the negligence issues which relate to the defendant, we find it unnecessary to consider whether the jury's finding of assumption of risk on the part of the plaintiff can be sustained.

*By the Court.*—Judgment affirmed.