**Stuart ZEIDMAN, Appellant**

v.

**Erin FISHER and Troy Fisher, Appellees.**

Superior Court of Pennsylvania.

Submitted May 4, 2009.

Filed Aug. 13, 2009.

Jeffrey H. Penneys, Philadelphia, for appellant.

Walter J. Timby, III, Philadelphia, for appellees.

BEFORE: KLEIN, BENDER and CLELAND, JJ.

OPINION BY CLELAND, J.:

¶ 1 This case reminds us again of the utility of communication to prevent injury, even in the pastoral setting of a golf course and in the context of a game in which etiquette is as integral as skill.

¶ 2 Appellant Stuart Zeidman (Zeidman) appeals the trial court's order granting summary judgment in favor of Appellee Troy Fisher.

¶ 3 On October 16, 2008, following the completion of pleadings and discovery, the trial court granted Troy Fisher's motion for summary judgment and, on November 6, 2008, denied Zeidman's motion for reconsideration.[12] Because we conclude genuine issues of material fact exist, we vacate the trial court's order and remand.

¶ 4 On June 15, 2007, Zeidman, Larry Rashkow (Rashkow) and Fisher were competing in a charity golf outing at Springfield Country Club when a duck hook [3] hit by Fisher, acknowledged to drive the ball upwards of 300 yards, struck Zeidman in the face causing serious and permanent injuries.[4] Minutes before the errant tee shot, Zeidman's threesome, waiting on the tee box of the 17th hole, had become concerned whether the longer driving Rashkow and Fisher might inadvertently drive their tee shots into the group ahead of them on the same hole, an uphill 301 yard par 4. As a result, Zeidman, deemed incapable of driving his ball into the group ahead, hit his tee shot. Because the group ahead had disappeared over the crest of a hill and might still be within Rashkow's or Fisher's range, Zeidman, with the agreement of his playing partners, got into his golf cart and drove on the cart path over the crest of the hill to the green to determine whether the group had cleared the green so Rashkow and Fisher might safely tee off. Troy Fisher Deposition, 4/23/08, at 31–33, 37, 41; Zeidman Deposition, 5/15/08, at 74, 81, 84. Zeidman made his observation and began his return trip on

---

1. On October 16, 2008, in a separate order, the trial court also granted a summary judgment motion by Erin Fisher. Zeidman had joined her as a defendant, not because she was in any way involved in the golf activity, but only because she was a named insured on the Fishers' liability insurance policy, a ground the trial court found frivolous. Trial Court Order (Erin Fisher), 10/16/08, at 1 n. 1. Zeidman has appealed only the summary judgment order in favor of Troy Fisher. Appellant's Brief at 2.

2. All references hereafter to "Fisher" are to Troy Fisher.

3. A "duck hook" or "snap hook" is a golf shot which, for a right-handed golfer, curves swiftly and sharply downward to the left, usually with considerable velocity.

4. Except where otherwise indicated, the facts set forth in this paragraph are characterized as "undisputed" by Fisher in his summary judgment motion and are acknowledged as undisputed in Zeidman's brief. *See* Motion for Summary Judgment at ¶¶ 7–16 and 20 and Appellant's Brief at 6–7.

the golf cart path along the left side of the 17th hole. As he reached a point about 75 to 100 yards from the tee box, a point within the line of sight of the tee box, Fisher launched the ill-fated duck hook. While traveling along the cart path, Zeidman did not look toward the tee box to see what Rashkow and Fisher were doing. Focusing instead on driving within the cart path, he did not see Fisher address the ball or hit his tee shot. Zeidman Deposition, 5/15/08, at 96–100. Because he intended to return to the tee box to report the group ahead was out of harm's way and because he never signaled it was safe to tee off, he never entertained the possibility Fisher would hit his tee shot. Zeidman Deposition, 5/15/08, at 96, 106, 110–111. Fisher, however, acknowledged he had clear view of Zeidman throughout his pre-shot preparation and thereafter. Troy Fisher Deposition, 4/23/08, at 40–41. Nonetheless, because Rashkow and he saw the lead group driving its golf carts "out of the area" of the 17th hole, he proceeded to hit his tee shot before Zeidman's return. Troy Fisher Deposition, 4/23/08, at 41–42.

¶ 5 The trial court held:

[I]t appearing that the undisputed facts fail to demonstrate that Defendant Fisher's conduct was unreasonable, or that he breached a duty to Plaintiff, and further that Plaintiff assumed the risk of the uncertain activity of golfing,[1] and in that there are no other disputed issues of material fact, it is hereby **ORDERED and DECREED** that Defendant Troy Fisher's Motion for Summary Judgment is **GRANTED**.

---

1 This case involved plaintiff being struck by an errant ball when Defendant Troy Fisher, a member of his group, hit a "duck hook" off the tee. Plaintiff, so designated because he had the shortest drive in the group, had gone ahead after playing his own tee shot, to insure that group ahead was clear of the fairway. He was in the cart on his way back to toward [sic] the tee, on the cart path off to the left of the fairway, when he was struck in the face by Defendant's ball.

Trial Court Order, 10/16/08, at 1.

¶ 6 Our standard and scope of review are as follows:

An appellate court may reverse the grant of a motion for summary judgment if there has been an error of law or an abuse of discretion. Since the issue as to whether there are no genuine issues as to any material fact presents a question of law, our standard of review is *de novo*; thus, we need not defer to the determinations made by the lower tribunals. Our scope of review, to the extent necessary to resolve the legal question before us, is plenary. We must view the record in the light most favorable to the nonmoving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*Chanceford Aviation Properties, LLP. v. Chanceford Twp. Bd. of Supervisors*, 592 Pa. 100, 107, 923 A.2d 1099, 1103 (2007) (internal citations omitted). "On appeal from [a] grant of summary judgment, we review the facts in the light most favorable to [the non-moving party] as taken from the pleadings, depositions, answers to interrogatories, admissions and any affidavits." *Hadar v. Avco Corp.*, 886 A.2d 225, 227 n. 1 (Pa.Super.2005).

■ ¶ 7 Before we can determine if there are any genuine issues of material fact, we note this case is governed by the traditional negligence standard of care. There are four elements to a cause of action for negligence: a duty of care, a breach of that duty, a causal connection between the defendant's conduct and the resulting injury, and damages. *Morena v. South Hills Health System*, 501 Pa. 634,

642 n. 5, 462 A.2d 680, 684 n. 5 (1983).[5]

¶ 8 The trial court has invoked the assumption of risk doctrine as well as the closely related "no-duty" rule in concluding Fisher was not guilty of negligence in injuring Zeidman. In effect, the trial court found Fisher had no duty of care with respect to Zeidman.[6]

¶ 9 We acknowledge the continuing vitality of the assumption of risk doctrine remains in doubt. *See* 4 West's Pa. Prac., Torts: Law and Advocacy § 16.2 and *Kaplan v. Exxon Corp.*, 126 F.3d 221 (3d Cir. 1997) (each discussing the opinions in *Rutter v. Northeastern Beaver Cty.*, 496 Pa. 590, 437 A.2d 1198 (1981), *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983), *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993), and *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 762 A.2d 339 (2000) wherein the viability of the doctrine has been debated in an arena now occupied by comparative negligence). We also acknowledge the similarity and, at times, equivalency of the doctrine to the "no-duty" rules.

¶ 10 We will discuss both concepts below.

¶ 11 Chief Justice Bell, writing for a divided Supreme Court in *Taylor v. Churchill Valley Country Club*, 425 Pa. 266, 270 n. 3, 228 A.2d 768, 770 n. 3 (1967), where a golfer's errant tee shot struck a caddy in his foursome who was down the fairway keeping a look-out for the foursome's tee shots, described the assumption of risk doctrine as follows:

The writer of this Opinion is convinced that plaintiffs are precluded from recovering for an additional and even more important reason-the minor plaintiff assumed the risk of the game. In *Schentzel v. Philadelphia National League Club*, 173 Pa.Super. 179, 96 A.2d 181 *supra*, the Court reviewed at great length the authorities governing recovery in trespass suits for injuries sustained by spectators in many sports, including particularly baseball, and denied recovery to a woman who had been struck by a foul ball and who had never previously seen a baseball game. In the *Schentzel* case, the Court pertinently and accurately said: '* * * We quote at length from Prosser on Torts at pages 383–384: 'By entering freely and voluntarily into any relation or situation which presents obvious danger, the

---

5. Since 1978, a plaintiff's right of recovery is governed by the comparative negligence doctrine, which provides:

In all actions brought to recover damages for negligence resulting in death or injury to person or property, the fact that the plaintiff may have been guilty of contributory negligence shall not bar a recovery by the plaintiff or his legal representative where such negligence was not greater than the causal negligence of the defendant or defendants against whom recovery is sought, but any damages sustained by the plaintiff shall be diminished in proportion to the amount of negligence attributed to the plaintiff.

42 Pa.C.S.A. § 7102(a).

6. The trial court also found Fisher's conduct was not unreasonable as a matter of law.

Because we hold that Fisher owed a duty of care to Zeidman, we believe there remains a jury question whether he breached that duty of care. Factors impacting on this question include Fisher's physical strength or power, his skill level, the quality of his play that day, his status as a professional or amateur, his knowledge of the etiquette of the game and the expectations of fellow competitors, the location of golfers within range of his tee shot and their awareness of his intention to hit a tee shot, and the need or lack of need to hurry or play fast. *See Archibald v. Kemble*, 971 A.2d 513, 520 (Pa.Super.2009) (listing factors weighing on whether an amateur hockey player's conduct in an adult "no-check" ice hockey league met or exceeded a reckless-misconduct standard of care).

plaintiff may be taken to accept it, and to agree that he will look out for himself, and relieve the defendant of responsibility. Those who participate or [s]it as spectators at sports and amusements [a]ssume all the obvious risks of being hurt by roller coasters, [f]lying balls, baseball, golf, polo, hockey, fireworks, explosions, or the struggles of the contestants. 'The timorous may stay at home.' (Cardozo, Chief Justice, in *Murphy v. Steeplechase Amusement Co.*, 250 N.Y. 479, 166 N.E. 173.) * * * "In *Getz v. Freed*, 377 Pa. 480, pages 482–483, 105 A.2d 102, page 103, we said: 'A person who plays golf (or cad[d]ies) assumes some risks of the game. For example, he knows that every star sometimes, and every 'dub' ofttimes, hooks or slices, and that when he is playing (or caddying) on a parallel hole or on a parallel area of ground he may be struck by a wild shot * * * (and) risks being hit and injured. 'In the instant case, the minor plaintiff testified that he knew the risk and accepted it and for this additional reason should not be allowed to recover.

*Taylor*, 425 Pa. at 270 n. 3, 228 A.2d at 770 n. 3 (most internal citations omitted; punctuation altered for readability). "[A]ll elements of the defense—that the plaintiff 'fully understands' the specific risk, 'voluntarily chooses' to encounter it, and 'under circumstances that manifest a willingness to accept it'—must be 'demonstrat[ed] ... in fact' before the theory will be submitted to the jury." *Fish v. Gosnell*, 316 Pa.Super. 565, 463 A.2d 1042, 1048 (1983).

■ ¶ 12 In the circumstances of the present case, treating Zeidman's deposition testimony as true, it is obvious Zeidman, on returning from his forward observer mission, did not consciously assume the risk of friendly fire when, to the contrary, he had every right to anticipate none of his playing partners would attempt

a tee shot until his return to the tee box. "[T]o grant summary judgment on the basis of assumption of the risk it must first be concluded, as a matter of law, that the party consciously appreciated the risk that attended a certain endeavor, assumed the risk of injury by engaging in the endeavor despite the appreciation of the risk involved, and that the injury sustained was, in fact, the same risk of injury that was appreciated and assumed." *Hadar v. Avco Corp.*, 886 A.2d 225, 229 (Pa.Super.2005) (quoting *Bullman v. Giuntoli*, 761 A.2d 566, 571–573 (Pa.Super.2000)) (emphasis removed).

¶ 13 In *Getz v. Freed*, 377 Pa. 480, 105 A.2d 102 (1954), the Supreme Court affirmed a judgment against a less than skilled golfer who hit a *third* tee shot without forewarning his playing partners of his impending shot while they were searching for the golfer's *first* tee shot which had duck hooked out of bounds less than 40 yards in front and left of the tee box. Before his *third* tee shot he had safely but unimpressively dribbled a *second* tee shot to a point in the fairway 40 yards in front of the tee box and beyond the forward distance of the first tee shot. The Supreme Court held:

Defendant was undoubtedly guilty of negligence in driving a third ball when his second drive was in the fairway, and he failed to warn the rest of the foursome of his intention to hit a third drive. If defendant had played his second drive, plaintiff was behind defendant's ball (although widely to the left) and consequently outside the orbit of defendant's next shot, so that it would have been impossible for defendant to hit plaintiff if he had played his second ball. Under these facts the lower Court could not legally hold and the jury could not find that plaintiff knowingly placed himself in a position of danger or assumed the risk of being hit or was guilty of

contributory negligence. We find no error in the Court's charge to the jury or its refusal to charge on the points of the assumption of risk and contributory negligence submitted by defendant.

*Getz*, 377 Pa. at 483, 105 A.2d at 103–104.

¶ 14 As in *Hadar* and *Getz*, Zeidman's deposition testimony raises an issue of material fact regarding his conscious recognition of risk such that the trial court was without basis in concluding he assumed the risk of injury.

▮ ¶ 15 When we examine the propriety of the summary judgment under the "no-duty" rule, we reach the same conclusion. Our Supreme Court has compared the "no-duty" rule with the assumption of risk doctrine:

> When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.
>
> Viewed in this context, appellee's claim based on the comparative negligence statute must fail. For fault to be apportioned under the comparative negligence statute, there must be two negli-

gent acts: a breach of duty by the defendant to the plaintiff and a failure by the plaintiff to exercise care for his own protection. Whatever the effect of the adoption of a system of comparative fault on the defense of assumption of risk where that defense overlaps and coincides with contributory negligence, the adoption of such a system has no effect where, as here, the legal consequence of the invitee's assumption of a known and avoidable risk is that the possessor of land is relieved of a duty of care to the invitee.

*Carrender v. Fitterer*, 503 Pa. at 187–189, 469 A.2d at 125 (internal citations and footnote omitted).

¶ 16 Our courts have applied the "no-duty" rule to spectator injuries at sporting events like baseball:

> Thus, "no-duty" rules, apply only to risks which are "common, frequent and expected," . . . and in no way affect the duty of theatres, amusement parks and sports facilities to protect patrons from foreseeably dangerous conditions not inherent in the amusement activity. Patrons of baseball stadiums have recovered when injured by a swinging gate while in their grandstand seats, by tripping over a beam at the top of a grandstand stairway, and by falling into a hole in a walkway, under a grandstand, used to reach refreshment stands[.]

*Jones v. Three Rivers Management Corp.*, 483 Pa. 75, 85, 394 A.2d 546, 549, 551 (1978) (internal citations omitted). Thus, the following statement in *Jones*, by analogy, frames the issue for Zeidman's case:

> The central question, then, is whether appellant's case is governed by the "no-duty" rule applicable to common, frequent and expected risks of baseball or by the ordinary rules applicable to all

other risks which may be present in a baseball stadium.

*Jones,* 483 Pa. at 86, 394 A.2d at 551.

¶ 17 Although a golfer's participation in golf, like a spectator's presence at a baseball game, may generally constitute an acceptance of risks inherent in the activity such that another golfer, or the golf course owner, may be relieved of a duty of care, we must always examine the circumstances surrounding the accident. For example, in *Jones,* our Supreme Court reinstated a jury verdict favoring a spectator who was hit by a batted ball, not while in the stands, but while traversing along an interior walkway within Three Rivers Stadium. The Supreme Court held the "no-duty" rule, typically applicable to spectators in the stands, inapplicable to a fan in an area of the stadium where the risk of injury is not "common, frequent and expected." *Jones,* 483 Pa. at 85–87, 394 A.2d at 551–552. In *Getz,* the Supreme Court, employing an assumption of risk analysis, upheld a jury verdict for a plaintiff who had no reason to expect the defendant to hit a third tee shot after his second tee shot was already safely in play.[7] In contrast, where a golfer already on a fairway waved a trailing player through and then remained down range within an obvious zone of danger as the trailing player hit his tee shot, the trailing player did not owe a duty of care—even a duty to shout the traditional warning of "Fore" as his shot hurtled toward his victim. *Boynton v. Ryan,* 257 F.2d 70, 72 (3d Cir.1958).

¶ 18 In conclusion, whether we apply the assumption of risk or "no-duty" rules, Zeidman has presented evidence vitiating the predicate of either rule that the risk of injury was one inherent or "common, frequent and expected" in the game. Conse-

quently, Zeidman has presented evidence raising a genuine issue of material fact whether Fisher owed him a duty of care, and, since Fisher understood the forward observer mission undertaken by Zeidman, whether Fisher breached that duty of care causing injury and damages to Zeidman.

¶ 19 Accordingly, whether Zeidman is able to convince a jury that his version of events is true remains to be seen, he, in any event, is entitled to his day in court. We vacate the trial court's order granting summary judgment and remand for proceedings consistent with this memorandum.

¶ 20 Appellees' Application for Oral Argument is denied.

¶ 21 Order vacated. Jurisdiction relinquished.

---

**7.** The fact that this was an assumption of risk case is not material. *See Carrender, supra* equating the doctrine with the "no-duty" rule.