J-A20031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| REBECCA MCGARRY | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PHILLY ROCK CORP. | |
| Appellee | No. 3326 EDA 2014 |

Appeal from the Order of November 19, 2014
In the Court of Common Pleas of Chester County
Civil Division at No.: No. 12-13367

BEFORE:  DONOHUE, J., SHOGAN, J., and WECHT, J.

MEMORANDUM BY WECHT, J.:                     **FILED OCTOBER 15, 2015**

Rebecca McGarry ("McGarry") appeals the November 19, 2014 order. In that order, the trial court granted Philly Rock Corp.'s ("PRC") post-trial motion and entered a judgment notwithstanding the verdict in favor of PRC. We affirm.

The trial testimony supports the following factual history.[1]  On March 5, 2011, McGarry and her husband, Peter, went to PRC, an indoor rock-

---

[1]    The entire trial was not transcribed; only the testimony of three witnesses, the jury instructions, and the argument for PRC's motion for a non-suit are available.  The trial court did not provide a detailed factual history.  From the transcripts available, it appears that the testimony of at least two PRC employees and one other defense witness is not available. Therefore, our ability to relate the history of this case is limited.  Other testimony was included in the reproduced record.  However, we may not consider any documents that are not in the certified record. ***Commonwealth v. Preston***, 904 A.2d 1, 7 (Pa. Super. 2006).

climbing facility, because they wanted to try a new activity. Notes of Testimony ("N.T."), 7/14/2014, at 3-4. On that day, McGarry signed a waiver and then took an introductory course on belaying equipment. *Id.* at 4-6. McGarry understood that the waiver meant that if she were injured, PRC would not be at fault. *Id.* at 37. McGarry also understood at the time that she signed the waiver that there were risks involved in rock climbing and that injuries were possible. *Id.* at 39. McGarry returned on March 12, 2011, and participated in rock-climbing again. *Id.* at 7.

McGarry and Peter returned to PRC again on March 16, 2011, and went to the bouldering area.[2] *Id.* at 8. McGarry received no instruction on bouldering, but watched other climbers. *Id.* at 9-10. Peter attempted the wall first and successfully completed his climb. *Id.* at 10. McGarry then attempted the wall. *Id.* at 12. Peter had placed a mat under her. *Id.* at 11. McGarry climbed about four feet, then jumped off the wall. *Id.* at 12. McGarry acknowledged that she knew that there was a risk of injury when jumping from a height of four feet. *Id.* at 42-43. McGarry did not look to see where the mats were before she jumped. *Id.* at 45. When she jumped, McGarry rolled her left ankle. *Id.* at 17. McGarry testified that the mats

---

[2] When "top-roping," the climber's harness is fastened to a rope that runs upward through or over an anchor. The other end of the rope is controlled, with the use of safety equipment, by the "belayer." In the event that the climber falls, the belayer is able to hold the rope fast, arresting the climber's fall. In bouldering, the activity at issue in this case, the climber is not attached to any safety equipment.

were in the correct position, but that she jumped in the wrong place and landed between two mats.[3]  *Id.* at 46-47.  McGarry heard a crunch, felt pain, and was taken to Phoenixville Hospital by ambulance.  *Id.* at 18.

McGarry's ankle was fractured, requiring surgery.  During surgery, screws and plates were inserted into her ankle.  *Id.* at 20.  McGarry had a second surgery in September 2011.  *Id.* at 24.  She also received physical therapy for a year after the injury.  *Id.* at 23.  A third surgery and more physical therapy followed in December 2012.  *Id.* at 26.  Because of the ankle injury, McGarry had difficulty walking long distances, standing for long periods of time, running, and jumping.  *Id.* at 29.

McGarry testified that she could not recall seeing signs with warnings and information that were posted by the bathrooms, at the reception desk, or on pillars in the building.  *Id.* at 39-40.  However, McGarry indicated that she recalled a sign about mat placement and was able to draw it from memory at her deposition.  *Id.* at 41-42.

On December 24, 2012, McGarry filed a complaint against PRC, in which she alleged that PRC's negligence and/or gross negligence caused her injury.[4]  The jury trial was held in July 2014.

---

[3]  McGarry told her physicians that she fell on the floor instead of the mat.  *Id.* at 45.

[4]  The complaint also included a claim for loss of consortium on behalf of Peter.

At trial, Corey Andres, who was qualified as an expert in sports and recreation venues and industries, testified for McGarry. N.T., 7/15/2014, at 11. Mr. Andres testified that some of the safety signs were placed where they were unlikely to be noticed. *Id.* at 41. Some of the signs warned about possible dangers, but gave no instructions about how to avoid those risks. *Id.* at 47, 52. Mr. Andres testified that belaying and bouldering are different and that, in bouldering, mat placement, the use and limitations of mats, and how to control one's descent are important. *Id.* at 54. Mr. Andres opined that it was insufficient to have signs instructing clients to ask an employee about climbing or safety because novice climbers may not know what to ask in order to participate safely. *Id.* at 57-58. Mr. Andres testified that PRC's reliance upon signs for safety information about bouldering, rather than requiring instruction, was inadequate. *Id.* at 71. Mr. Andres acknowledged that McGarry was told in her belaying course that she should ask staff if she had questions about bouldering, but that McGarry did not do so. *Id.* at 81. He also acknowledged that there was a sign that instructed about correct placement of mats, how to land on the mat, and how to avoid injury. *Id.* at 99-101. Mr. Andres opined that PRC's standard of care required compulsory instruction as suggested by industry literature. *Id.* at 83.

David Rowland, PRC's president, also testified. N.T., 7/16/2014, at 3. Rowland testified that PRC offered an optional bouldering course. *Id.* at 7. He agreed that correct mat placement was important and could reduce the

likelihood of injury. *Id.* at 13-14. However, Rowland testified that the climber was responsible for placing the mats, even if the climber was inexperienced. *Id.* at 15-16. Rowland admitted that there were no written rules or instruction manuals beyond the signs posted in the facility. *Id.* at 22. PRC recommends that climbers rely upon spotters to guide them to safe landing spots, but it was not mandatory. *Id.* at 27-28.

At the close of McGarry's case, PRC moved for a non-suit. N.T., 7/16/2014 (Argument), at 3. The trial court heard argument on the motion and decided that the evidence did not support punitive damages. Therefore, the court decided not to submit that issue to the jury. *Id.* at 11. Recognizing that non-suit was a close issue, the trial court denied the motion and permitted the defense to present its case. *Id.* at 11-12. PRC also moved for a directed verdict at the close of evidence, which the trial court also denied. *Id.* at 13-14.

On July 16, 2014, the jury reached its verdict. It found that PRC was grossly negligent, that PRC's gross negligence was the cause of McGarry's injuries, that McGarry was contributorily negligent, and that PRC and McGarry were each fifty percent at fault. The jury awarded McGarry $150,000 without a reduction for her own negligence.

On July 25, 2014, PRC filed a post-trial motion in which it sought judgment notwithstanding the verdict ("JNOV"). PRC asserted that the trial court had erred in not granting its motions for non-suit and/or a directed verdict, that McGarry had failed to prove gross negligence as a matter of

law, that the jury disregarded the court's instructions on assumption of risk and gross negligence, and that McGarry's expert was not qualified. On November 19, 2014, the trial court granted PRC's motion and entered JNOV. The trial court concluded that it erred in failing to grant the motion for directed verdict because the evidence did not support a finding of gross negligence, and that McGarry knowingly and voluntarily accepted a risk, which relieved PRC's duty to McGarry. Order, 11/19/2014, at 1-2 n.1.

On November 25, 2014, McGarry filed a notice of appeal. On November 26, 2014, the trial court directed McGarry to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and McGarry timely complied. The court filed a Pa.R.A.P. 1925(a) opinion on February 2, 2015.

McGarry raises four issues for our review:

1. Did the Trial Court commit an error of law and/or abuse its discretion when the Trial Court misapplied the standard for j.n.o.v., which requires that j.n.o.v. be granted only where the movant is entitled to judgment as a matter of law and/or evidence was such that no two reasonable minds could disagree that the outcome should have been in favor of the movant?

2. Did the Trial Court commit an error of law and/or abuse its discretion when the Trial Court granted a motion for j.n.o.v., after the jury had been instructed on the law of gross negligence, applied the facts, and determined that [PRC's] conduct reached the level of gross negligence?

3. Did the Trial Court commit an error of law and/or abuse its discretion in applying the assumption of risk doctrine in granting [PRC's] post[-]trial motion?

4. Did the Trial Court commit an error of law and/or abuse its discretion when the Trial Court prohibited [McGarry] from presenting evidence as to the training *vel non* of employees of [PRC] at trial?

McGarry's Brief at 5.

McGarry's first two issues relate to the trial court's entry of JNOV. Additionally, the third issue, related to assumption of risk, is intertwined with JNOV. As such, we discuss them together. Our standard of review of a trial court's ruling on a motion for JNOV is as follows:

> In reviewing a trial court's decision whether or not to grant judgment in favor of one of the parties, we must consider the evidence, together with all favorable inferences drawn therefrom, in the light most favorable to the verdict winner. Our standard[s] of review when considering the motions for a directed verdict and judgment notwithstanding the verdict [JNOV] are identical. We will reverse a trial court's grant or denial of a [directed verdict or JNOV] only when we find an abuse of discretion or an error of law that controlled the outcome of the case. Further, the standard of review for an appellate court is the same as that for a trial court.
>
>> There are two bases upon which a [directed verdict or JNOV] can be entered; one, the movant is entitled to judgment as a matter of law and/or two, the evidence is such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant. With the first, the court reviews the record and concludes that, even with all factual inferences decided adverse to the movant, the law nonetheless requires a verdict in his favor. Whereas with the second, the court reviews the evidentiary record and concludes that the evidence was such that a verdict for the movant was beyond peradventure.
>
> *Campisi v. Acme Markets, Inc.,* 915 A.2d 117, 119 (Pa. Super. 2006) (quotation omitted). *See Berg v. Nationwide Mutual Insurance Co., Inc.*, 44 A.3d 1164 (Pa. Super. 2012).

*Hall v. Episcopal Long Term Care*, 54 A.3d 381, 395 (Pa. Super. 2012) (bracketed material in original).

Because McGarry signed a waiver, no one in this case disputes that McGarry was required to prove that PRC was grossly negligent to recover. Gross negligence has been defined as follows:

> Gross negligence has . . . been termed the entire absence of care and the utter disregard of the dictates of prudence, amounting to complete neglect of the rights of others. Additionally, gross negligence has been described as an extreme departure from ordinary care or the want of even scant care [and] . . . as [a] lack of slight diligence or care, and [a] conscious, voluntary act or omission in reckless disregard of a legal duty and of the consequences to another party . . . .
>
> [G]ross negligence is clearly more egregious than ordinary negligence.

*Ratti v. Wheeling Pittsburgh Steel Corp.*, 758 A.2d 695, 704-05 (Pa. Super. 2000) (citations and quotation marks omitted).

The trial court granted PRC's motion for JNOV because it found that McGarry had assumed the risk of injury, which was open and obvious. Trial Court Opinion ("T.C.O."), 2/15/2015, at 5. Because McGarry assumed the risk, PRC owed her no further duty. *Id.* at 5-6. Based upon McGarry's testimony, the trial court found that McGarry knew that there was a risk in bouldering, knew she could be injured from a height of four feet, knew she was jumping from the wall without looking for the mats, and jumped anyway. *Id.* at 7-8. The trial court also found that, because the dangers were obvious, PRC reasonably could expect that McGarry would take steps to

protect herself, precluding a finding that PRC was grossly negligent. ***Id.*** at 8-9.

In response, McGarry first notes that assumption of risk is subjective and that McGarry only could assume a risk that she understood. McGarry argues that, because there were no written safety materials, McGarry did not know how to position the mats or how to use a spotter to avoid injury. McGarry's Brief at 21-23. McGarry also observes that her expert witness testified that the lack of instruction contributed to her injury, the jury was instructed on assumption of risk, and the jury decided that McGarry did not appreciate the risk. By setting aside that decision, McGarry contends that the trial court invaded the province of the jury. ***Id.*** at 24-25. McGarry also argues that the facts of this case were such that the trial court erred in deciding that the risks were so open and obvious that reasonable minds could not disagree upon the issue of duty. ***Id.*** at 25-27. Finally, McGarry notes that the assumption of risk doctrine has fallen out of favor with the passage of the comparative negligence statute. However, despite the applicability of assumption of risk, McGarry argues that the jury was instructed adequately about both doctrines and that the trial court erred in upsetting that verdict. ***Id.*** at 27-28.

"Assumption of risk is a judicially created rule [based in the common law that] did not protect [individuals] from the consequences of their own behavior . . . . The doctrine, however, has fallen into disfavor, as evidenced by our [S]upreme [C]ourt's two . . . attempts to abolish or limit it." ***Staub***

***v. Toy Factory, Inc.***, 749 A.2d 522, 528 (Pa. Super. 2000) (*en banc*).  Our Supreme Court has noted that "the complexity of analysis in assumption of risk cases makes it extremely difficult to instruct juries."  ***Howell v. Clyde***, 620 A.2d 1107, 1108 (Pa. 1993) (plurality).  Courts also have questioned whether the doctrine serves a purpose following Pennsylvania's adoption of comparative negligence.  ***See id.*** at 1109; ***Bullman v. Giuntoli***, 761 A.2d 566, 570 (Pa. Super. 2000); ***Staub***, 749 A.2d at 528; ***see also Zeldman v. Fisher***, 980 A.2d 637, 640 (Pa. Super. 2009) ("We acknowledge the continuing vitality of the assumption of risk doctrine remains in doubt.").  However, despite its difficulties, the doctrine remains the law of Pennsylvania.  ***See Bullman***, 761 A.2d at 570 ("[A]s the doctrine has not been formally abolished by our Supreme Court, we are obligated to apply the doctrine despite its less than wholehearted support."); ***Staub***, 749 A.2d at 528 ("[U]ntil our [S]upreme [C]ourt or our legislature abrogates assumption of risk in negligence cases, the doctrine remains viable . . . .").  Therefore, we review the trial court's application of assumption of risk.

The doctrine has been defined as follows:

[A]ssumption of risk is established as a matter of law only where it is beyond question that the plaintiff voluntarily and knowingly proceeded in the face of an obvious and dangerous condition.  Voluntariness is established only when the circumstances manifest a willingness to accept the risk.  Mere contributory negligence does not establish assumption of risk.  Rather, a plaintiff has assumed the risk where he has gone so far as to abandon his right to complain and has absolved the defendant from taking any responsibility for the plaintiff's injuries.  In order to prevail on assumption of risk, the defendant must establish

both the "awareness of the risk" prong and the "voluntariness" prong.

**Staub**, 749 A.2d at 529 (citations and quotation marks omitted).

Assumption of risk has been compared to estoppel:

> It might be assumed, for purposes of an assumption of risk analysis, that the defendant(s) was negligent, and at least partly responsible for the injury sustained, nevertheless, given the circumstances in which the injury was sustained, the plaintiff is essentially "estopped" from pursuing an action against the defendant because it is fundamentally unfair to allow the plaintiff to shift responsibility for the injury to the defendant when the risk was known, appreciated and voluntarily assumed by the plaintiff.

**Bullman**, 761 A.2d at 570. The doctrine also has been viewed, as the trial court did here, in relation to duty:

> If the case is viewed from the perspective of a duty analysis, the evidence presented at trial establishes that [the plaintiff] voluntarily encountered a known risk, thereby obviating any duty which might otherwise have been owed him by [the defendant]. Under this analysis, the case is controlled by the assumption of risk principle that one who voluntarily undertakes a known risk thereby releases the defendant from any duty of care.

**Howell**, 620 A.2d at 1110-11. Similarly, "[w]hen an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpoint to the possessor's lack of duty to protect the invitee from those risks." **Zeldman**, 980 A2.d at 642.

The risk that is appreciated and accepted must also be "the specific risk that occasioned injury." **Bullman**, 761 A.2d at 571. For instance, assumption of risk did not apply when a student was injured by a discharged ceremonial cannon, when the student was not aware that the cannon could cause the type of injury sustained and because the cannon had always required more force to discharge than the student applied when he was injured. **Id.** at 572 (citing **Struble v. Valley Forge Military Academy**, 665 A.2d 4 (Pa. Super. 1995)). An installer working on stilts, while appreciating a general risk of falling, had not assumed the risk of slipping on a piece of vinyl siding when he had cleared a path of debris and did not see the siding. **Id.** (citing **Barrett v. Fredavid Builders, Inc.**, 685 A.2d 129 (Pa. Super. 1996)). In **Bullman**, a girl assumed the risk of traversing a plank over an excavation ditch because the risk was open and obvious, but she did not assume the risk of falling through insulation board covering a porch that appeared to be solid because that risk was not appreciated. **Id.** at 573-74.

In spectator sports, we have found assumption of risk or no duty for risks that are "common, frequent, and expected," such as being hit by a batted ball or by a hockey puck, but not when the risk is "not inherent in the amusement activity," such as tripping over a beam or falling in a hole in a walkway at a stadium. **Zeldman**, 980 A.2d at 642-43. In **Zeldman**, the plaintiff raised sufficient issues of material fact to overcome a motion for summary judgment based upon assumption of risk when he was struck by a

- 12 -

golf ball hit by his golfing companion. The plaintiff went ahead to check that the golfing group ahead of his group was off the green and was returning to the tee. Assumption of risk was not available at summary judgment because the plaintiff raised an issue of material fact as to whether he had reason to expect that his golfing companion would hit a shot off the tee while he was en route. *Id.* at 641.

Turning to this case, we first must consider whether the danger was open and obvious. The testimony supported the conclusion that it was. Multiple signs throughout the facility warned that climbing and bouldering are dangerous and may result in serious injury. Additionally, the danger of these activities "is well understood by virtually all individuals of adult age." *Bullman*, 761 A.2d at 573. Falling and causing a injury to an ankle or wrist is a "common, frequent, and expected" risk of climbing or bouldering. *Zeldman*, 980 A.2d at 642.

Further, McGarry knew of and appreciated the risk. McGarry testified that she knew there were risks in bouldering and that she knew she could be injured when jumping even from a height of four feet. McGarry saw the sign stressing the importance of mat placement and drew it from memory much later at her deposition. Despite knowing that mats and their placement were important, McGarry nonetheless did not look before she jumped and landed in the wrong place. McGarry also acknowledged that she signed a waiver, which she understood meant that she was responsible for any injuries. She then voluntarily proceeded with the activity despite her appreciation of that

- 13 -

risk. Based upon this testimony, no two reasonable minds could fail to conclude that McGarry understood and appreciated the specific risk of injury associated with jumping from four feet without first looking for the mat. Although McGarry argues that the lack of instruction about correct mat placement did not fully apprise her of the risk, the lack of instruction would be relevant only to PRC's negligence, which is not at issue as McGarry assumed the risk and PRC had no further duty toward her. Therefore, the trial court did not err in finding that McGarry assumed the risk.

McGarry argues that the trial court ignored the standard for granting JNOV and, instead, supplanted the jury's findings with its own. McGarry contends that the trial court ignored evidence that was favorable to her, particularly the opinion of her expert witness. McGarry's Brief at 10-15.

As noted in **Hall**, *supra*, in reviewing a grant of JNOV, we must consider the evidence in the light most favorable to the verdict winner and we will reverse only upon a showing that the trial court made a legal error or abused its discretion.

> It is axiomatic that, "[t]here are two bases upon which a judgment n.o.v. can be entered: one, the movant is entitled to judgment as a matter of law, and/or two, the evidence was such that no two reasonable minds could disagree that the outcome should have been rendered in favor of the movant." **Moure v. Raeuchle**, 604 A.2d 1003, 1007 (Pa. 1992) (citations omitted). To uphold JNOV on the first basis, we must review the record and conclude "that even with all the factual inferences decided adverse to the movant the law nonetheless requires a verdict in his favor, whereas with the second [we] review the evidentiary record and [conclude] that the evidence was such that a verdict for the movant was beyond peradventure." **Id.**

- 14 -

*Rohm & Haas Co. v. Cont'l Cas. Co.*, 781 A.2d 1172, 1176 (Pa. 2001) (citation modified).

Having reviewed the incomplete record that we have been provided,[5] we conclude that, even viewing the evidence in the light most favorable to McGarry, the trial court did not err in granting JNOV. Even if we accept Mr. Andres' testimony that PRC was negligent in failing to provide instruction on bouldering and mat placement and that PRC's signs were inadequate to instruct McGarry how to avoid injury, McGarry testified that she knew the risk of injury in bouldering, and that she proceeded despite that risk. As noted, as part of an assumption of risk analysis, we may presume PRC was negligent and partly responsible for McGarry's injuries. *See Bullman*, *supra*. In fact, the jury found that PRC was partially responsible. However, McGarry's own testimony compels the trial court's finding that she assumed the risk, which, as a matter of law, precludes a verdict in her favor. The trial court did not err or abuse its discretion in awarding JNOV.

McGarry also asserts that the jury was charged accurately and thoroughly regarding gross negligence. McGarry contends that the jury's finding of gross negligence was supported by the facts of the case, including that the bouldering course was optional, that PRC did not have written safety

_____

[5] "[T]he ultimate responsibility of ensuring that the transmitted record is complete rests squarely upon the appellant and not upon the appellate courts." *Preston*, 904 A.2d at 7.

policies, that the policy on the use of spotters was unclear, and that no instruction was given on proper mat placement. McGarry's Brief at 16-20.

While expressing no opinion as to whether the evidence supported a finding of gross negligence, we conclude that McGarry's assumption of the risk barred her recovery regardless of whether PRC was grossly negligent. Because the evidence supported the trial court's conclusion that McGarry assumed the risk of injury, PRC owed no duty to McGarry and, therefore, was not legally responsible for her injury.

Finally, McGarry complains that the trial court erred in precluding her from introducing evidence regarding whether PRC's employees were trained or qualified. McGarry argues that this evidence was relevant and should have been presented to the jury. McGarry's Brief at 29.

"Generally, an appellate court's standard of review of a trial court's evidentiary rulings is whether the trial court abused its discretion. . . ." ***Buckman v. Verazin***, 54 A.3d 956, 960 (Pa. Super. 2012). "Evidence is . . . relevant if it tends to prove or disprove a material fact in issue." ***McManamon v. Washko***, 906 A.2d 1259, 1274 (Pa. Super. 2006).

The trial court sustained PRC's relevance objection to questions regarding the training of PRC's employees. Because McGarry did not receive instruction from PRC employees, the trial court reasoned that if PRC was obligated to provide instruction to clients as part of its duty, PRC would be negligent regardless of whether its the employees were adequately trained.

If PRC was not obligated to provide instruction to clients, then PRC would not be negligent regardless of employee training. T.C.O. at 1 n.1.

McGarry has not set forth a compelling argument as to why the proposed testimony would have been relevant. McGarry states:

> [T]he training was relevant because [Rowland] testified that staff members were available to answer questions for [McGarry]. Had the instructors been qualified or properly trained, they would have known to instruct [McGarry] in the specific risks associated with bouldering, including proper mat placement, spotting and the dangers associated with failure to do so, which were the true risks of bouldering.

McGarry's Brief at 29. The evidence in question would have invited the jury to speculate about what instruction McGarry would have received had she sought it out. However, the evidence made clear that there was no required bouldering class, that PRC expected people who were bouldering to ask questions of staff members, and that McGarry did not do so. Had McGarry sought instruction and been injured, or had McGarry complained regarding the care she received from PRC staff after her injury, then staff training would be relevant. That was not the case, and the trial court did not abuse its discretion in determining that the testimony was not relevant.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>10/15/2015</u>