Owen ORTHMANN, Plaintiff-Appellant,

v.

**APPLE RIVER CAMPGROUND, INC.,**
et al., Defendants-Appellees.

No. 84–1290.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 14, 1984.
Decided March 19, 1985.

Clint Grose and Shawn Bartsh, Grose, Von Holtum, Sieben & Schmidt, Minneapolis, Minn., for plaintiff-appellant.

Robert F. Wall, Richards, Wall & Harris, Hudson, Wis., Thomas D. Bell, Doar, Drill & Skow, New Richmond, Wis., for defendants-appellees.

Before CUDAHY and POSNER, Circuit Judges and SWYGERT, Senior Circuit Judge.

POSNER, Circuit Judge.

Owen Orthmann, age 19, was rendered a quadriplegic when he dove into the Apple River near the village of Somerset, Wisconsin, and his head struck a rock on the shallow bottom. A resident of Minnesota (to which he moved after the accident), Orthmann brought this diversity suit in a federal district court in Wisconsin against the village and against eight firms that comprise the Floater's Association. Members of the Association rent inner tubes for floating down the river to tourists like Orthmann, who was injured when he interrupted his float to go on shore to do some

diving. The district judge granted the motion of the members of the Floater's Association, made under Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the complaint for failure to state a claim, and the village's motion for summary judgment. Thus the complaint was dismissed in its entirety, and Orthmann has appealed.

■ A statute of Wisconsin provides that a suit may not be brought against a public agency unless two conditions are satisfied: "written notice of the circumstances of the claim" must be served on the agency "within 120 days after the happening of the event giving rise to the claim," unless the "agency had actual notice of the claim and the claimant shows to the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant" agency, Wis.Stat. § 893.80(1)(a); and "a claim containing the address of the claimant and an itemized statement of the relief" sought "must be presented to the appropriate clerk [for the defendant agency,] ... and the claim ... disallowed," *id.*, § 893.-80(1)(b). No claim was ever presented to the village. Section 893.80(1)(b), unlike (1)(a), contains no excuses, and the Wisconsin courts interpret its requirement strictly (as must we in this diversity case, since the Wisconsin statute clearly is "substantive" for purposes of applying the rule of *Erie R.R. v. Tompkins*, 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938)). See *Rabe v. Outagamie County*, 72 Wis.2d 492, 499–501, 241 N.W.2d 428, 432–33 (1976); cf. *Mannino v. Davenport*, 99 Wis.2d 602, 614–15, 299 N.W.2d 823, 829 (1981). Orthmann is therefore barred from suing the village. But should he want to reinstitute his suit against the village (assuming it is not barred by the statute of limitations) by filing his section (1)(b) claim now, the question would arise whether, as the district court thought, he is barred anyway because he failed to file the notice required by section (1)(a), and we ought to address this question now, in order to minimize the parties' uncertainty about the possibility of reinstatement.

■ The accident occurred on July 19, 1980, and the complaint was not filed till July 13, 1983—three years later. No written notice of the circumstances of Orthmann's claim was ever served on the village. Orthmann says the village knew of the accident because, although it occurred outside of the village limits, a village policeman rushed to the scene along with men from the county sheriff's office, and because three months after the accident an investigator for Orthmann sought information from that policeman and another village policeman. But if knowledge of an accident by a municipality's police officers were knowledge by the municipality, the notice statute would have little effect in personal-injury cases, since police are called to the scene of almost every serious accident, sometimes—as here—outside their own jurisdiction. In some cases the circumstances make it obvious that the municipality will be a defendant. For example, in *Rabe v. Outagamie County, supra*, 72 Wis.2d at 497, 241 N.W.2d at 431, where the plaintiff's injury was caused by county employees who were loading tree stumps onto vehicles on county business, there could be no doubt that the county was the potential target of a tort suit. Here the accident occurred outside of the village limits and no village employees were involved, at least directly; the only theory of municipal liability is that the village was a lessor of a member of the Floater's Association. This liability is not so transparent that actual notice can be presumed.

■ However, the record indicates that, several months before bringing the present suit, Orthmann filed an identical suit in Minnesota against the same defendants, including the village. The filing of the suit gave the village actual notice of Orthmann's claim. If Orthmann files his (1)(b) claim against the village, the claim is disallowed, and Orthmann refiles his suit against the village and shows that his delay in providing (by means of the Minnesota suit) notice of his claim was not prejudicial to the village, then the Wisconsin no-

tice statute would not be a bar to his maintaining the suit.

Regarding the dismissal of the complaint against the other defendants, a different issue is presented. As fleshed out by certain documents in the appellant's appendix, of which more shortly, the complaint alleges that these defendants—a campground, a restaurant, and other businesses in Somerset—joined together in a commercial venture (the "Floater's Association") to promote innertubing on the Apple River. On the day of the accident Orthmann rented an inner tube from the campground, where he had camped the night before. The floater is supposed to float down a four-mile stretch of the river and when he comes to the end return on a bus hired by the defendants; the rental fee that Orthmann paid the campground included the bus ride. The defendants own most of the land on both sides of this stretch of the river and take various measures to keep the river clean, such as providing litter bins on the banks. The place where Orthmann dove from, however, was owned not by any of the defendants but by a family named Montbriand. A tree on the property had grown out over the river and kids liked to dive off it, but when Orthmann arrived the queue for the tree was too long and he decided to dive off the bank instead. The water was cloudy, and was reflecting the sun, so that Orthmann couldn't see the bottom, but he was reassured by the fact that he had seen other people dive into the river in the same area without incident.

■ If the accident had occurred while Orthmann was in the inner tube, there would be no doubt that the complaint should not have been dismissed on the pleadings. One who invites another to engage in a sporting activity for a fee owes him a duty of care. Of course, if the hazard was obvious, or so inseparable a part of the sport that it was a risk assumed by engaging in it, or if the defendants had no reason to know of the hazard (maybe some trespasser had dropped the rock into the river the night before the accident), they might well escape liability. But these issues could not be resolved on the pleadings. The complaint would be good against a Rule 12(b)(6) motion.

■ It is true that only one defendant (the campground) dealt directly with Orthmann, leaving unclear the role of the other seven members of the Floater's Association. But the complaint alleges—not implausibly in light of the name of the association—that floating was a joint venture of the Association's members; and whatever the ultimate truth of this allegation, it is enough to prevent a member from getting the complaint dismissed under Rule 12(b)(6) just because he did not deal directly with Orthmann. This is not to say that a restaurant which contributed to the cost of a flyer advertising floating, in the hope of getting business from floaters, would be liable as a joint tortfeasor for the torts of the firms actually engaged in renting inner tubes or launching sites. The restaurant would lack the "equal right to a voice in the direction of the enterprise" that is an element of the joint-enterprise doctrine. Restatement, Second, Torts § 491, comment c (1965); see also Prosser and Keeton on the Law of Torts § 72 and p. 519 (5th ed. 1984); *Samson v. Riesing*, 62 Wis.2d 698, 709–10, 215 N.W.2d 662, 668 (1974). But if the restaurant was a joint venturer in floating, it could not escape liability just by not dealing face-to-face with the floater who came to grief. See *Pritchett v. Kimberling Cove, Inc.*, 568 F.2d 570, 579–80 (8th Cir.1977), and *Kahle v. Turner*, 66 Ohio App.2d 49, 53, 420 N.E.2d 127, 130 (1979)—cases somewhat like the present case.

■ We can take the analysis a step further, and assert with some confidence that if the defendants (or perhaps just one of them, if they were joint venturers) had owned the Montbriand property, with its popular tree, the complaint would withstand a Rule 12(b)(6) motion. Although the mere fact that you invite people into a part of your property for a fee does not make them business invitees on the rest of the property, see, e.g., *Davis v. United States*, 716 F.2d 418, 424 (7th Cir.1983), we are

supposing a situation in which an enterprise trying to make a profit out of floating knows that its customers, while floating down the river, pass by land owned by the enterprise that is conveniently and enticingly fitted with a natural diving board, and that some of these customers land and dive from the tree and the surrounding property. Floating is a summer sport. (Orthmann was injured in July.) A brochure of the Floater's Association shows as one would expect that floaters are young and wear bathing suits. Nothing is more natural than that some of them—maybe many of them—should combine floating with swimming, including diving from a tree invitingly adapted to such use. On these assumptions there would be an implied invitation to the enterprise's customers to use the tree and surrounding land for diving into the river, and the enterprise would be prima facie liable if through its negligence a customer was injured while doing so. See, e.g., *Perkins v. Byrnes*, 364 Mo. 849, 269 S.W.2d 52 (1954).

It is true, as we said earlier, that a landowner does not have to warn even his business invitees of obvious hazards; a department store does not have to put up signs telling its customers not to walk into the walls or catch their clothing in the railings of the escalators. Maybe the hazard of diving into a river whose bottom you cannot see is so obvious that it is in the same class. But if it is true as Orthmann states that he saw others diving without incident in the same area from which he dove, maybe the hazard was not so obvious in this case. The question cannot be resolved on the pleadings unless Wisconsin has crystallized a rule of law barring damages for anyone injured in such a diving accident, and we can find no such rule. See *Gould v. Allstar Ins. Co.*, 59 Wis.2d 355, 208 N.W.2d 388 (1973). (If Orthmann had pleaded a violation of Wisconsin's safeplace statute, Wis.Stat. §§ 101.01 *et seq.*, as *Gould* indicates he might have done, then it would be altogether clear from *Gould* that diving into an opaque body of water was not contributory negligence per se under the statute.) Although *Scheeler v.*

*Bahr*, 41 Wis.2d 473, 164 N.W.2d 310 (1969), did hold such conduct to be contributory negligence per se, *Gould* limited *Scheeler* to cases where the diver is merely a licensee, not as here a business invitee. And even if we could say that Orthmann was negligent as a matter of law, this would not authorize dismissal of the complaint, since contributory negligence is no longer a complete defense in Wisconsin, unless the victim's negligence is greater than the injurer's. Wis.Stat. § 895.045.

It would make no difference that the defendants do not own the bottom of the Apple River and are forbidden by Wisconsin law to remove material from its bottom without approval of the state authorities. Wis.Stat. § 30.20. The negligence in the case we have put is not in placing a hazard in the river but in failing to warn of a hazard (here, that the river was too shallow for diving); this is like the *Perkins* case cited earlier, where the hazard consisted of hidden undercurrents in the river that ran past the defendants' resort. See also *Kesner v. Trenton*, 158 W.Va. 997, 1000–06, 216 S.E.2d 880, 883–86 (1975).

What makes this case more difficult than our hypothetical variants is that the defendants do not own the property from which Orthmann dove. But according to an affidavit of one of the Montbriands, which Orthmann included in the appendix to his brief in this court, shortly after the accident the defendants came on the Montbriands' land without asking their permission, and cut the tree down. The affidavit also states that the Montbriands had seen the defendants cleaning and maintaining the banks of the river on the Montbriands' land. It is possible to infer that the defendants, though they did not own the Montbriand property, treated it as if they did—the cutting down of the tree after the accident being a dramatic assertion of a right normally associated with ownership or at least (which is all that is necessary, as we are about to see) possession.

This is not to say that the defendants could be held liable, under any

tort theory we know, if their customers just strayed onto someone else's property and got injured there. This is not because the defendants could not prevent such injuries; they might be able to prevent them quite cheaply and effectively by a warning sign, just as we have assumed that they might have been able to prevent an accident caused by an object that they were not authorized to remove from the river. It is because the law just has not yet imposed on landowners who invite the public onto their property the duty of inspecting their neighbors' property to see whether any of their customers may be wandering onto it, and endangering themselves by doing so. See, e.g., *Stedman v. Spiros,* 23 Ill.App.2d 69, 161 N.E.2d 590 (1959). Since a landowner has no right to inspect his neighbors' lands, let alone to correct dangerous conditions on them, little would be accomplished, in general, by making him liable for those conditions along with the neighbors. And though one can think of exceptions—cases where the landowner knows of the condition without having gone on his neighbor's land, and can correct it at trivial cost, as with a warning sign—the law has not seen fit to impose such liability. But if the landowner treats the neighbor's property as an integral part of his, the lack of formal title is immaterial. Whoever controls the land is responsible for its safety. See, e.g., *Husovsky v. United States,* 590 F.2d 944, 953 (D.C.Cir.1978). That is why it is normally the tenant rather than the landlord who is liable to anyone injured as a result of a dangerous condition on leased land and why this field of tort law is more accurately described as land occupiers' and possessors' liability than as landowners' liability. See, e.g., Prosser and Keeton on the Law of Torts, *supra,* § 57 at p. 386, § 63 at p. 434; *Enis v. Ba-Call Bldg. Corp.,* 639 F.2d 359, 361 (7th Cir.1980).

It would make no sense to treat an occupier more leniently just because his rights in the land were less well-defined than a tenant's—or maybe were nonexistent. Suppose an amusement park when it built its parking lot had encroached on a neigh-

bor's land, and a customer of the amusement park was injured by a pothole in the part of the lot that the amusement park actually did not own (not yet having acquired it by operation of the doctrine of adverse possession) or have any right to occupy. The amusement park could not escape liability by pointing out that the hazard was not actually on its property. See, e.g., *Merkel v. Safeway Stores, Inc.,* 77 N.J.Super. 535, 540–41, 187 A.2d 52, 55 (1962), where a grocery store was held liable for an injury resulting from its failure to remove snow and ice from a public sidewalk that "was the means of ingress and egress provided by defendant for its customers." See also *Banks v. Hyatt Corp.,* 722 F.2d 214, 225–27 (5th Cir.1984); *MacLean v. Parkwood, Inc.,* 354 F.2d 770, 772 (1st Cir.1966).

█ We imagine that the defendants have been reading this opinion with mounting fury, because in reciting the facts and drawing our legal conclusions from them we have relied on documents, such as the Montbriand affidavit, that have come into this case in a most irregular way. The plaintiff presented no evidence in the district court, which dismissed the complaint against the members of the Floater's Association on the pleadings. But Orthmann had, as we mentioned earlier, brought an identical suit in Minnesota (he filed the present suit only because of doubts, which proved to be well founded, that the defendants could be served with process in Minnesota); and discovery in that suit had proceeded to the point of generating some deposition testimony and assorted other evidence, including the Association's brochure. Orthmann put some of the evidence into the appendix to his brief in this court, along with some evidence created *after* the district court dismissed his complaint: the Montbriand affidavit is dated March 26, 1984; the complaint was dismissed on January 23, 1984.

Of course this is a most irregular mode of proceeding; and of course these materials are no part of the official record before us on this appeal. See Fed.R.App.P. 10(a),

30(a); 7th Cir.R. 12(a). But bearing in mind that dismissal under Rule 12(b)(6) is proper only if the allegations of the complaint make clear that the plaintiff cannot state a claim, Orthmann was free on this appeal to give us an unsubstantiated version of the events of July 19, 1980—provided it was not inconsistent with the allegations of the complaint—in order to show that the complaint should not have been dismissed on its face. It can make no difference that he went further and (unnecessarily) tried to prove some of those allegations in the appendix to his brief. The materials in his appendix have no standing as evidence but are usable to show how the accident might have happened.

 The complaint is very short—but considerably longer than the sample negligence complaint in the forms appendix to the Federal Rules of Civil Procedure; and Rule 84 says that "the forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Missing from the complaint is the tree, the other divers, the cutting down of the tree after the accident—indeed, even the fact that it was the bank rather than the inner tube that Orthmann dove from (a fact, however, that complicates rather than eases Orthmann's road to relief). But the complaint does allege that the defendants were joint venturers in floating, that they "did jointly control the maintenance and use of" the relevant stretch of the Apple River, that "said control ... included but was not limited to the following: clean-up of the river, access onto the river, regulations for activities on the river, safety on the river, and other activities and conditions incident to the use of the [river] for purposes of innertubing," that Orthmann was a customer when he was injured, that he "was in the exercise of due care and caution for his own safety," and that he was injured as a result of the defendants' negligence "in failing to provide for the care and safety and well-being of their patrons and the general public in their maintenance and use of the Apple River." All this may be somewhat unclear and unspecific but it satisfies the perhaps too modest burdens that the Federal Rules of Civil Procedure place on the pleader. The function of the complaint under the federal rules is to notify the defendant of the plaintiff's claim rather than to detail the evidence which if true would show that the plaintiff ought to win his case. Of course, if, as is increasingly common, the plaintiff pleads his case in detail (to "educate" the judge or nudge the defendant toward settlement), he may find himself pleading facts that show, as a sparser complaint might not have done, that he has no cause of action—and then he is out of luck; he has set himself up for a Rule 12(b)(6) motion. See 5 Wright & Miller, Federal Practice and Procedure § 1357, at pp. 604–10 (1969). But Orthmann did not do that. He filed a brief complaint which merely fails to plead the facts showing his theory of liability; and this is no ground for dismissal. The defendants' proper response is not to move to dismissal but to serve contention interrogatories requiring the plaintiff to particularize his theory of suit, or to proceed to summary judgment.

The critical passage in the district judge's opinion dismissing the complaint is the following: "There is not ... any attempt on the part of the plaintiff to suggest in his pleading that such control of the diving site [as would be exercised by one who owned, operated, and maintained the site] was, indeed, exercised by the defendants." But it was not the plaintiff's burden to suggest any such thing in his pleading. His allegation that the defendants controlled "safety on the river, and other activities and conditions incident to the use of the Apple River near Somerset, Wisconsin, for purposes of innertubing," was all the allegation that was necessary to plead a cause of action based on control of the site from which he dove. The tree on the Montbriand property could be one of the "conditions" referred to.

Maybe the defendants will be able to move for summary judgment on the basis of affidavits that decisively refute Orthmann's theory and explain away the impli-

cations of the Montbriand affidavit. We do not hold that Orthmann is entitled to a trial. But it was error to try to dispose of the case on the pleadings. So while the judgment in favor of the Village of Somerset is affirmed (without prejudice, however, to the right of Orthmann to attempt to reinstate his suit if he complies with section (1)(b) of the Wisconsin notice statute), the judgment in favor of the other defendants is reversed and the case is remanded for further proceedings consistent with this opinion. We shall award no costs in this court, and Circuit Rule 18 shall apply on remand.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.