Bruce and Mary Ann **MONTAGAZZI,** Individually and as Parents and Natural Guardians of Matthew Montagazzi, a Minor, Appellants

v.

Nicholas **CRISCI,** a Minor, by and through Jennifer Crisci, his Guardian ad Litem; Bryan Bachman, a Minor; Ryan Derbaum, a Minor, by and through Shelly Derbaum, his Guardian ad Litem; and Jimmy Joe Pratte, a Minor by and through James Pratte, his Guardian ad Litem, Appellees.

Superior Court of Pennsylvania.

Argued Jan. 26, 2010.
Filed April 30, 2010.

Craig L. Fishman, Pittsburgh, for appellants.

Gina M. Zumpella, Pittsburgh, for Bachman, appellee.

Thomas A. McDonnell, Pittsburgh, for Crisci, appellee.

Michael E. Lang, Beaver, for Derbaum, appellee.

Douglas J. Stipanovich, Pittsburgh, for Pratte, appellee.

BEFORE: BENDER, PANELLA and OTT, JJ.

OPINION BY BENDER, J.:

¶ 1 Bruce and Mary Ann Montagazzi, Individually and as the Parents and Natural Guardians of Matthew Montagazzi, a Minor, appeal the trial court's order granting summary judgment in favor of all defendants on claims that they were negligent in failing to warn or prevent Matthew Montagazzi from lighting the fuse of an improvised explosive device that he and the minor defendants created. Detonation of the device amputated portions of several fingers on Matthew's right hand. The trial court concluded that the minor defendants owed Matthew no duty and, in the alternative, found that Matthew had assumed the risk of injury as a matter of law. We concur in the trial court's assessment and, accordingly, we affirm the entry of summary judgment in favor of all defendants.

¶ 2 The Montagazzis commenced this action in June 2007 following a mishap on June 30 2005, in which 15–year–old Matthew Montagazzi (Matthew) sustained the loss of portions of his right thumb, middle and ring fingers when the improvised explosive device he was holding detonated. On the day in question, defendants Nicholas Crisci, Bryan Bachman, Ryan Derbaum and Jimmy Pratte met Matthew, (collectively "the boys"),[1] in the Montagazzis' garage and gathered materials to create a home-made explosive. Afterward, planning to detonate the device, they went to the Crisci residence due to its more remote location in the hope that the accompanying noise would go unnoticed. Using the Criscis' garage, Matthew built the device using a $CO_2$ cartridge from a paintball gun. To create the device, Matthew drilled a hole in the cartridge, filled the cartridge with gunpowder, inserted a wick into the hole, and taped it in place to create an improvised fuse.[2] Upon comple-

---

1. Among the boys, Matthew was the eldest and Nicholas Crisci, at eleven years old, was the youngest. Ryan Derbaum and Jimmy Pratte were each twelve years old and Bryan Bachman was fourteen.

2. It appears the Nicholas Crisci provided the CO2 cartridge while the boys assert differing sources for the gunpowder. Matthew contends that the boys worked collectively to obtain it by disassembling firecrackers, while

tion, Matthew elected to hold the device while Ryan Derbaum used a cigarette lighter to light it. As the boys looked on, Matthew threw the device from the garage and awaited the explosion. After several minutes, when nothing happened, Matthew retrieved the device and asked Derbaum to light it again. Although Derbaum had reservations about the length of the fuse remaining after the first attempt at detonation, he voiced no objection to Matthew and lit the fuse. Before Matthew had time to throw the device a second time, it exploded, inflicting the injuries to Matthew's hand from which this action arose.

¶ 3 In their complaint, the Montagazzis assert that the other boys all owed Matthew a duty of due care requiring that they prevent him from building the improvised explosive and warn him of the danger he was encountering. The Montagazzis premise their claim on the assertion that the other boys placed Matthew in a position of danger and by doing so assumed a duty to safeguard against the attendant risk of harm. Brief for Appellant at 10. In the alternative, the Montagazzis assert that the boys were engaged in a joint enterprise within the meaning of Restatement (Second) of Torts section 491 and argue that Matthew may therefore recover against the other members of the enterprise to the extent of their negligence. *Id.* at 12.

¶ 4 Following the completion of discovery, all defendants moved for summary judgment, arguing that the conduct most proximate to Matthew's injuries was his own, that they had not placed him in a position of danger, and that they had no duty to guard him against harm. In re-

sponse to the Montagazzis' alternative argument, the defendants argued that the boys' efforts to create an improvised explosive did not constitute a joint enterprise, as the necessary element of pecuniary interest was absent from their undertaking. In addition, the defendants asserted that, by handling a device he had designed to explode, Matthew assumed the risk of injury. Following oral argument, the trial court, the Honorable Deborah A. Kunselman, concluded that 1) there was no interaction or special relationship between Matthew and the other boys that gave rise to a duty to safeguard him from harm, 2) the boys were not engaged in a joint enterprise, and 3) reasonable minds could not differ that Matthew had assumed the risk of his injuries by handling an explosive device while it was lit. Trial Court Opinion (TCO), 5/29/09, at 11. Consequently, the court granted the defendants' respective summary judgment motions, dismissing the Montagazzis' action.

¶ 5 The Montagazzis have now filed this appeal raising the following question for our review:

Did the court err in granting summary judgment in favor of all Defendants and against the Plaintiffs?

Brief for Appellants at 2.

¶ 6 The Pennsylvania Rules of Civil Procedure allow disposition of a case on summary judgment only where the record demonstrates an absence of factual questions material to the elements of the disputed causes of action. We have held accordingly that:

"[A] proper grant of summary judgment depends upon an evidentiary record that either (1) shows the mate-

---

the other boys assert that Matthew obtained the gunpowder from inside the Montagazzi residence. On the facts of this case, however, we find the respective sources of the components legally irrelevant as, due to elements we

will discuss *infra,* the construction of the device was not a joint enterprise as that term is defined by the Restatement (Second) of Torts and Pennsylvania case law.

rial facts are undisputed or (2) contains insufficient evidence of facts to make out a *prima facie* cause of action or defense [.]" Under [Civil] Rule 1035.2(2), "if a defendant is the moving party, he may make the showing necessary to support the entrance of summary judgment by pointing to materials which indicate that the plaintiff is unable to satisfy an element of his cause of action." Correspondingly, "[t]he non-moving party must adduce sufficient evidence on an issue essential to its case and on which it bears the burden of proof such that a jury could return a verdict favorable to the non-moving party."

*Basile v. H & R Block, Inc.,* 777 A.2d 95, 100–01 (Pa.Super.2001) (citations omitted). Thus, a plaintiff's failure to adduce evidence to substantiate any element of his cause of action entitles the defendant to summary judgment as a matter of law. *See Ertel v. Patriot-News Co.,* 544 Pa. 93, 674 A.2d 1038, 1042 (1996). As with all questions of law, our scope of review of a trial court's order granting summary judgment is plenary. *See id.* at 1041. Our standard of review is the same as that of the trial court; we must review the record in the light most favorable to the non-moving party granting [him] the benefit of all reasonable inferences and resolving all doubts in [his] favor. *See id.* We will reverse the court's order only where the appellant ... demonstrates that the court abused its discretion or committed legal error. *See Basile,* 777 A.2d at 101.

*Lewis v. Philadelphia Newspapers, Inc.,* 833 A.2d 185, 190 (Pa.Super.2003).

¶ 7 In support of their challenge to the entry of summary judgment, the Montagazzis assert first that the boys' conduct in providing components for the construction of the explosive device placed Matthew in a position of danger, triggering a duty under Restatement (Second) of Torts section 321. Brief for Appellant at 10–11. That section provides as follows:

§ 321. Duty To Act When Prior Conduct Is Found To Be Dangerous

(1) If the actor does an act, and subsequently realizes or should realize that it has created an unreasonable risk of causing physical harm to another, he is under a duty to exercise reasonable care to prevent the risk from taking effect.

(2) The rule stated in Subsection (1) applies even though at the time of the act the actor has no reason to believe that it will involve such a risk.

RESTATEMENT (SECOND) OF TORTS § 321 (1965)[3]. In reliance on this section, the Montagazzis contend that two of the boys, Jimmy Pratte and Nicholas Crisci, recognized after the first attempt at detonation that the fuse of the device was too short yet Crisci lit the fuse and Pratte said nothing to warn Matthew of the attendant danger of "premature detonation." *Id.* at 11. Although the Montagazzis appear to acknowledge that Matthew bears some responsibility for his own injuries, they suggest that determination of that issue is subject to a comparative negligence analysis and that the other boys are not thereby relieved of their duty. *Id.* at 12.

¶ 8 The trial court determined that the boys' actions in providing materials for the construction of the device did not place Matthew in a state of peril, and that in fact

---

**3.** We acknowledge that the Supreme Court of Pennsylvania has not officially adopted Restatement (Second) section 321. Nevertheless, we have previously relied on the provision for the proposition that a defendant who

had created a risk of harm was under a duty to prevent that harm from taking effect. *See Cipriani v. Sun Pipe Line Co.,* 393 Pa.Super. 471, 574 A.2d 706, 715 (1990).

his peril arose from his own actions in holding a lighted explosive in his hand after a previous unsuccessful attempt at detonation. TCO at 6. The court expressed its determination on this point as follows:

> The court finds that failing to stop the construction of the device, supplying the component parts and participating in a plan to build the device are not enough to give rise to a duty on behalf of the other boys. These actions did not place Matthew in a state of peril. If the boys had simply constructed the device and gone their separate ways, no one would have been injured. It was the lighting of the device which placed Matthew in a state of peril that eventually caused the harm.

*Id.* In view of that finding, the court reasoned further that only Ryan Derbaum, who actually lit the fuse of the device, could have incurred the duty the Montagazzis urge under Restatement section 321. The court concluded, however, as a matter of law, that all of the boys, including Derbaum, were relieved of responsibility by Matthew's assumption of the risk. *Id.* at 11 ("[R]easonable minds could not differ that Matthew voluntarily chose to encounter a known risk of holding an explosive device while it was lit.").

¶ 9 We concur in the trial court's analysis. "To recover under a claim for negligence, the plaintiff must prove the following elements: 'that the defendant owed a duty of care to the plaintiff, the defendant breached that duty, the breach resulted in injury to the plaintiff, and the plaintiff suffered an actual loss or damage.'" *Petrongola v. Comcast–Spectacor, L.P.*, 789 A.2d 204, 209–210 (Pa.Super.2001). "Whether a duty exists under a particular set of facts is a question of law. It has long been hornbook law that a duty arises only when one engages in conduct which foreseeably creates an unreasonable risk of harm to others." *Id.*

> The determination of whether a duty exists in a particular case involves the weighing of several discrete factors which include: (1) the relationship between the parties; (2) the social utility of the actor's conduct; (3) the nature of the risk imposed and foreseeability of the harm incurred; (4) the consequences of imposing a duty upon the actor; and (5) the [over all] public interest in the proposed solution.

*Gutteridge v. A.P. Green Services, Inc.*, 804 A.2d 643, 655 (Pa.Super.2002) (quoting *Althaus ex rel. Althaus v. Cohen*, 562 Pa. 547, 552, 756 A.2d 1166, 1168 (2000)).

■ ¶ 10 In this instance, the trial court disposed of the issue of duty, relying predominantly on "the nature of the risk imposed and foreseeability of the harm incurred." *Id.* In that regard, the court concluded that the explosive itself posed no risk unless detonated by lighting the improvised fuse, effectively rendering injury unforeseeable until the fuse was lit. We agree. Because only Ryan Derbaum participated in the lighting of the fuse, only he may be subject to a duty to guard against the attendant risk. In this regard, however, the "relationship of the parties" casts doubt on whether any duty could be fairly imposed under these circumstances. The parties do not dispute that Ryan Derbaum was one of the younger boys and that Matthew was the oldest. While minors in Matthew's age group are presumptively capable of negligence subject to rebuttal, those in Ryan's age group are presumptively incapable of negligence. *See Kuhns v. Brugger*, 390 Pa. 331, 135 A.2d 395, 401 (1957). Although we recognize that questions attendant to the rebuttal of either presumption raise questions of fact that might otherwise obviate summary judgment, we also note that the evident legal

disparity between these two boys' capacities makes imposition of a duty problematic, particularly when considered in view of the foreseeability element the trial court found dispositive. Nevertheless, our concerns in that regard are not the primary impetus for the resolution we reach.

¶ 11 The prospect of imposing a duty on any of the boys is also rendered questionable by our Supreme Court's recognition of the limitation of the duty to act for another's aid or protection as recommended by Restatement (Second) of Torts section 314. That section provides as follows:

> § 314.  Duty To Act For Protection Of Others
>
> The fact that the actor realizes or should realize that action on his part is necessary for another's aid or protection does not of itself impose upon him a duty to take such action.

RESTATEMENT (SECOND) OF TORTS § 314 (1965). Applying this provision, the Supreme Court has clearly circumscribed the extent to which another party may be legally compelled to act where the injured party has incurred a risk of his own volition. In *Yania v. Bigan*, the Court considered the claims of a decedent's estate which asserted a duty by the defendant to rescue the decedent after he had jumped into ten feet of water accumulated in a trench at a strip mine following the "cajolery and inveiglement" of the defendant.

*Yania,* 397 Pa. 316, 155 A.2d 343, 345 (1959). The defendant then offered no assistance and, unable to extricate himself from the water, the decedent drowned. *See id.* Although the Court recognized that a "special relationship" between the parties (currently delineated in Restatement (Second) section 314A[4]) may otherwise supersede the limitations of section 314, it concluded that in the absence of such a relationship the decedent's own conduct in encountering an obvious risk of injury relieved the defendant of any responsibility for the decedent's harm. *See id.* at 346. The Court's rationale is worth repeating:

> Lastly, it is urged that Bigan failed to take the necessary steps to rescue Yania from the water. The mere fact that Bigan saw Yania in a position of peril in the water imposed upon him no legal, although a moral, obligation or duty to go to his rescue unless Bigan was legally responsible, in whole or in part, for placing Yania in the perilous position. RESTATEMENT, TORTS, § 314. *Cf.* RESTATEMENT, TORTS, § 322. The language of this Court in *Brown v. French,* 104 Pa. 604, 607, 608, is apt: ["]If it appeared that the deceased, by his own carelessness, contributed in any degree to the accident which caused the loss of his life, the defendants ought not to have been held to answer for the consequences re-

---

**4.** Restatement (Second) section 314A provides as follows:

§ 314A.  Special Relations Giving Rise To Duty To Aid Or Protect

(1) A common carrier is under a duty to its passengers to take reasonable action

   (a) to protect them against unreasonable risk of physical harm, and

   (b) to give them first aid after it knows or has reason to know that they are ill or injured, and to care for them until they can be cared for by others.

(2) An innkeeper is under a similar duty to his guests.

(3) A possessor of land who holds it open to the public is under a similar duty to members of the public who enter in response to his invitation.

(4) One who is required by law to take or who voluntarily takes the custody of another under circumstances such as to deprive the other of his normal opportunities for protection is under a similar duty to the other.

RESTATEMENT (SECOND) OF TORTS § 314A (1965).

sulting from that accident. * * * He voluntarily placed himself in the way of danger, and his death was the result of his own act. * * * That his undertaking was an exceedingly reckless and dangerous one, the event proves, but there was no one to blame for it but himself. He had the right to try the experiment, obviously dangerous as it was, but then also upon him rested the consequences of that experiment, and upon no one else; he may have been, and probably was, ignorant of the risk which he was taking upon himself, or knowing it, and trusting to his own skill, he may have regarded it as easily superable. But in either case, the result of his ignorance, or of his mistake, must rest with himself-and cannot be charged to the defendants["]. The complaint does not aver any facts which impose upon Bigan legal responsibility for placing Yania in the dangerous position in the water and, absent such legal responsibility, the law imposes on Bigan no duty of rescue.

*Id.*

¶ 12 We find the Supreme Court's rationale in *Yania* equally applicable here. The Court's decision, grounded in a pragmatic recognition of the limits of one's responsibility to account for the voluntary conduct of another, implicitly balances the factors we repeated decades later in *Gutteridge. See* 804 A.2d at 655. Indeed, the Court's analysis in *Yania* appears to consider and reconcile the foreseeability of the

harm and the relationship of the parties, with the policy consideration inherent in "the [over all] public interest in the proposed solution." *See id.* Although such analysis may not obviate a duty based on an affirmative act like Ryan Derbaum's in lighting the fuse of the explosive, it most certainly eliminates any vestige of duty to be imposed on the other boys. Neither the relationship of the parties, the foreseeability of harm from the boys' acts, nor considerations of public policy can be said to impose a duty under the circumstances of Matthew's injury vis-a-vis Nicholas Crisci, Bryan Bachman, or Jimmy Pratte. Thus, neither Restatement section 321 nor Restatement section 314A offer a basis for Matthew's claims. Nothing in the conduct of Crisci, Bachman or Pratte created an unreasonable risk of the harm Matthew suffered, *see* RESTATEMENT (SECOND) OF TORTS § 321, or created a "special relationship" from which a duty to Matthew might otherwise derive, *see* RESTATEMENT (SECOND) TORTS § 314A.

■ ¶ 13 Similarly, the Montagazzis are not granted a right of recovery by the purported resemblance of the boys' efforts to a "joint enterprise." under Restatement (Second) section 491.[5] Brief for Appellant at 12. In support of their "joint enterprise" claim, the Montagazzis argue that two lines of Pennsylvania case law have recognized an attendant right of recovery and that a decision of our Supreme Court dispenses with the usual requirement that the parties to a "joint enterprise" must share a common pecuniary interest.[6] *Id.*

---

**5.** This section of the Restatement reads as follows:

§ 491. Joint Enterprise
(1) Any one of several persons engaged in a joint enterprise, such as to make each member of the group responsible for physical harm to other persons caused by the negligence of any member, is barred from recovery against such other persons by the negligence of any member of the group.

(2) Any person engaged in such a joint enterprise is not barred from recovery against the member of the group who is negligent, but is barred from recovery against any other member of the group.
RESTATEMENT (SECOND) OF TORTS § 491 (1965).

**6.** Comment "c" to Restatement (Second) section 491 defines the elements of a "joint enterprise" as follows:

at 13 (citing, *inter alia, Johnson v. Hetrick*, 300 Pa. 225, 150 A. 477 (1930)). The Montagazzis argue further that the right of recovery under section 491 has been judicially extended to support liability based on a duty to warn. *Id.* at 14 (citing *Orthmann v. Apple River Campground, Inc.*, 757 F.2d 909, 912 (7th Cir.1985)). Analyzing these points, the trial court distinguished *Orthmann*, recognizing that section 491 is merely a rule of imputed negligence emanating from duties imposed elsewhere and does not give rise to a duty on its own. *See* TCO at 4 ("The duty to warn in *Orthmann* did not arise because the parties were members of a joint enterprise.... Instead the duty to warn in *Orthmann*[ ] arose from one of the special relationships set forth in Restatement § 314A, namely a possessor of land and a business invitee."). Concluding accordingly that section 491 had no application to this case in the absence of an independent duty, the court did not determine whether the elements of a joint enterprise had been established. *See* TCO at 5.

¶ 14 Upon review of the applicable cases, we find the trial court's disposition entirely correct. Although, as Matthew advocates, section 491 may allow for

recovery by one member of a joint enterprise against other members whose conduct is negligent, *see* RESTATEMENT (SECOND) OF TORTS § 491(2), the resulting rule of law does not create a duty to warn—or for that matter any other duty. As the language of section 491 makes clear, liability may be imposed upon those who are "negligent." Such language recognizes implicitly that the elements from which liability may arise, including duty, must be demonstrated in accordance with existing precepts of tort law. Presuming that the facts in a given situation are such as to satisfy those elements, section 491 merely defines a set of circumstances under which liability may be applied, (subsection (2)), and simultaneously limits liability among members of the "joint enterprise," (subsection (1)). It does not create an independent duty. The trial court's interpretation of the holding in *Orthmann* is therefore unassailable.[7] Only where the duty on which the plaintiff relies arises under another rule of law, such as Restatement (Second) section 314A (as in *Orthmann*), does section 491 have any application. Inasmuch as we have disavowed the duties upon which the Montagazzis otherwise rely, we find section 491 and related case law clearly inapplicable.[8] The Montagaz-

---

The elements which are essential to a joint enterprise are commonly stated to be four: (1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control. Whether these elements exist is frequently a question for the jury, under proper direction from the court. RESTATEMENT (SECOND) OF TORTS § 491 cmt. c (1965)

7. We recognize and reiterate that the holdings of federal circuit courts bind neither this Court nor the trial court, but may serve as persuasive authority in resolving analogous

cases. *See Stone Crushed Partnership v. Kassab Archbold Jackson & O'Brien*, 589 Pa. 296, 908 A.2d 875, 884 (2006) (reaffirming that "inferior federal court decisions as persuasive but not binding, consistent with prior case law.").

8. Even were we to recognize a duty implicit in section 491, we would remain constrained to disavow its application here. Contrary to the Montagazzis assertions, the circumstances fail to demonstrate any pecuniary interest among the boys in cobbling together an improvised explosive. The boys were not creating explosives for resale and we find no validity in the Montagazzis' suggestion that a pecuniary interest is otherwise demonstrated in the fact that the boys somehow procured materials. The sources of those materials re-

zis' assertion to the contrary is without merit.

¶ 15 Finally, the Montagazzis challenge the trial court's determination that, notwithstanding any duty ascribed to Ryan Derbaum in having lit the fuse of the explosive, Matthew assumed the risk of injury in twice handling a device he had designed to explode, after the fuse was lit. Brief for Appellants at 15. Although the Montagazzis appear to acknowledge that the doctrine of voluntary assumption of a known risk remains a viable defense under Pennsylvania law, they argue that the doctrine should be abolished. Establishing their position in advance of a contemplated appeal to our Supreme Court, the Montagazzis suggest that application of the doctrine deprives plaintiffs of the opportunity to present circumstances to a factfinder where only a factfinder is qualified to evaluate the claims at issue. *Id.* ("Cases in which assumption of risk is asserted as an affirmative defense invite the Court, as in this case, to substitute its determination of credibility and what a reasonable person would have done for that of the jury.").

¶ 16 Review of the Montagazzis' brief as it concerns assumption of the risk reveals that they have explored the issue only on the most limited basis for purposes of issue preservation, understanding that abolition of the doctrine is not within the purview of this Court's authority. Notwithstanding that limitation, however, we find no basis upon which to invalidate the trial court's application of the doctrine at

summary judgment finding that none of the defendants could be deemed liable for Matthew's injuries. The court reached its decision by application of the standard of review for summary judgment, holding as a matter of law, that reasonable minds could not disagree that under these circumstances Matthew assumed the risk of injury. TCO at 10. The court recognized as well, however, that assumption of the risk operates merely as a corollary of the absence of a duty; to the extent the injured plaintiff proceeded in the face of a known danger, he relieved those who may have otherwise had a duty, implicitly agreeing to take care of himself. TCO at 9 (citing *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120, 124 (1983)). In *Carrender*, which remains controlling precedent in Pennsylvania, our Supreme Court established that assumption of the risk is, as the trial court explained, a function of the duty analysis:

> Appellee misperceives the relationship between the assumption-of-risk doctrine and the rule that a possessor of land is not liable to his invitees for obvious dangers. When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks. By voluntarily proceeding to encounter a known or obvious danger, the

main disputed and we find the fact that someone, somewhere, paid for the supplies in some form, at some time, simply too speculative to support a *prima facie* showing that these defendants had a pecuniary interest in the outcome of their project.

The Montagazzis' reliance on our Supreme Court's decision in *Johnson, supra,* does not alter our conclusion. As all of the defendants have recognized, the Court's omission in

*Johnson* to insist on demonstration of a common pecuniary interest between the driver of a car and his passenger predates adoption of Restatement (Second) section 491 by some thirty-five years. Consequently, the case was not decided with reference to that section and cannot be interpreted to obviate any of the elements it establishes for recognition of a joint enterprise.

invitee is deemed to have agreed to accept the risk and to undertake to look out for himself. It is precisely because the invitee assumes the risk of injury from obvious and avoidable dangers that the possessor owes the invitee no duty to take measures to alleviate those dangers. Thus, to say that the invitee assumed the risk of injury from a known and avoidable danger is simply another way of expressing the lack of any duty on the part of the possessor to protect the invitee against such dangers.

*Carrender,* 469 A.2d at 125 (citations omitted).

¶ 17 Under this formulation, contrary to the Montagazzis' assertion, the question of assumption of the risk typically remains for the jury. Only where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct can the court enter summary judgment; in effect the court determines that the plaintiff relieved the defendant of the duty to guard him from a risk of harm regardless of the source from which the duty derived. *See Lewis,* 833 A.2d at 190; *Carrender,* 469 A.2d at 125. Here, we find the trial court's disposition of this point beyond question. Matthew conceived and executed a design for an improvised explosive, procured the wick that served as a fuse, allowed Derbaum to light it and then held it in his hand on two successive occasions. We conclude, as did the trial court, that Matthew assumed the risk under those circumstances that the device would explode; indeed, that was precisely what he had designed it to do. In view of the current state of the law, the trial court did not err in finding that Matthew assumed the risk of his own injury.

¶ 18 For the foregoing reasons, we affirm the trial court's entry of summary judgment.

¶ 19 Order granting summary judgment **AFFIRMED.**