**Robert J. THOMPSON, Appellant**

v.

**Eugene P. GINKEL, Lisa D. Ginkel, Glenn J. Kress, Donald Kress, Brandy Kress, Kress Brothers Builders, Inc., Kress Brothers Builders, L.P., Sandra F. Dobler, Appellees.**

Superior Court of Pennsylvania.

Submitted March 10, 2014.

Filed June 17, 2014.

Reargument Denied Aug. 18, 2014.

Peter D. Friday, Pittsburgh, for appellant.

Craig A. Markham, Erie, for Ginkel, appellees.

Paul K. Geer, Pittsburgh, for Kress Brothers Builders, Inc., appellee.

BEFORE: GANTMAN, P.J., DONOHUE and FITZGERALD *, JJ.

OPINION BY DONOHUE, J.:

Appellant, Robert J. Thompson ("Thompson"), appeals from the trial court's order granting summary judgment in favor of Appellee, Eugene P. Ginkel ("Ginkel"). For the reasons that follow, we reverse the trial court's order and remand the case for trial.

On June 26, 2008, Ginkel served as the lead technician for a fireworks display consisting of two parts, a main event and a grand finale. For the main event, a rack of ten 3″ diameter mortar tubes were loaded with 10 shells, with Ginkel lighting one fuse every thirty to forty seconds. As they were fired, another individual, Mike Boedecker, assisted Ginkel by reloading the tubes with new shells. The main event lasted approximately 12 to 14 minutes. The set up for the grand finale was separate from the main event, and consisted of three sets of 10 shells, each fused to a common lighting point, also loaded into 3″ diameter mortar tubes. Ginkel lit these three sets of mortars every four seconds, and the grand finale was thus completed in approximately 12 seconds.

Thompson volunteered to assist Ginkel by observing the display and counting every shell upon launch to verify that it exploded. To perform this task, Thompson positioned himself approximately 50 feet away from the staging area where Ginkel and Boedecker were lighting the fuses and reloading the mortar tubes. He wore protective goggles and earplugs provided by Ginkel. At some point near the end of the fireworks display, Thompson was injured by a "low break," where a shell does not go up and explode as intended. The "low break" resulted in a shell landing and exploding close to Thompson, causing various injuries including burns, the loss of parts of his digits, and partial blindness in one eye.

On June 24, 2010, Thompson filed a complaint against, *inter alia*, Ginkel,[1] alleging negligence in the preparation and execution of the fireworks display. After the completion of discovery, Ginkel filed a motion for summary judgment, contending that Thompson's claims should be barred because he assumed the risk of injury. According to Ginkel, discovery showed that Thompson had participated in more than 20 fireworks displays, had repeatedly performed tasks like loading mortar tubes, and had attended fireworks safety seminars. As a result of Thompson's formal training and extensive work experience, Ginkel contended that Thompson was well aware of the dangers of being within 50 feet of the launching area in general, and of the risks of "low breaks" in particular. Ginkel further indicated that prior to the "low break" that injured him, Thompson had already witnessed two or three other "low breaks" in the fireworks display and had not moved to safer ground. In fact, upon hearing Boedecker yell that a rack of mortar tubes had fallen or was broken,

---

* Former Justice specially assigned to the Superior Court.

1. Thompson's complaint also named several other defendants, all of whom were separately dismissed from the action and have no relation to the current appeal. In its order granting summary judgment to Ginkel that is the subject of this appeal, the trial court also granted summary judgment in favor of Lisa D. Ginkel, Ginkel's wife. Ms. Ginkel did not join in her husband's appellate brief and thus is not a party to this appeal.

Thompson was actually moving closer to the staging area at the time of his injuries.

In a brief in opposition to Ginkel's motion for summary judgment, Thompson attached an expert report prepared by Mark A. Sokalski ("Sokalski").[2] Sokalski's expert report references a purchase order for the mortar shells used at the fireworks display at issue, which appears to show that the shells used in the main event were 3″ in diameter while those used in the finale were 2.5″ in diameter. For Sokalski, this difference is significant, since in his professional opinion the use of mortar shells in oversized tubes was the cause of the "low break" that resulted in the injuries to Thompson. According to Sokalski, the use of oversized tubes can result in the escape of excessive gases around the shell (known as "blow-bye") and may also cause the shell not to stand upright and vertical in the tube. Based on Sokalski's report, Thompson argued that while he understood the risks of "low breaks" generally, he was unaware of Ginkel's negligent use of oversized mortar tubes and did not appreciate or assume the risks of the higher probability of "low breaks" caused by Ginkel's negligence.

The trial court granted Ginkel's motion for summary judgment and dismissed Thompson's complaint. According to the trial court, "All of the evidence in the record points to the fact that [Thompson] was injured by a 3 inch shell coming out of a 3 inch tube." Trial Court Opinion, 8/7/2013, at 10. As a result, the trial court rejected Sokalski's expert report because it was based on an unreasonable assumption (i.e., that the shell that injured Thompson was 2.5″ in diameter). Id. Because Thompson knew about the possibility of "low breaks" in general and had witnessed other "low breaks" in the same fireworks display without making any effort to remove himself from the dangers they posed, the trial court ruled that Thompson "assumed the risk of being injured by a low break at this particular fireworks display." Id. at 9.

This timely appeal followed, in which Thompson poses the following five issues for our consideration and determination:

1. Whether [Thompson] presents a *prima facie* case that [Ginkel] exposed [Thompson] to an unreasonable risk of harm in a fireworks production resulting in [Thompson's] loss of an eye and finger amputations?

2. Whether there are factual issues as to whether [Ginkel] breached any duty to [Thompson] as a volunteer aiding with the at issue fireworks display?

**2.** We agree with Ginkel's contention that the trial court should not have considered Sokalski's expert report because it was not a proper part of the summary judgment record. Pursuant to Rule 1035.3 of the Pennsylvania Rules of Civil Procedure, an adverse party may supplement the record to establish a material issue of fact. Pa.R.C.P. 1035.3. This Court has ruled, however, that such supplementation cannot be accomplished merely by attaching items as unsworn exhibits to a brief in opposition to a summary judgment motion. *See, e.g., Scopel v. Donegal Mut. Ins. Co.,* 698 A.2d 602, 606 (Pa.Super.1997) ("'[B]ecause litigants' briefs are not part of the official record, such supplementation cannot

be achieved through mere attachment to a party's brief in opposition.").

This Court has also held, however, that this Rule is subject to waiver if not raised in the trial court. *See, e.g., Staiano v. Johns Manville Corp.,* 304 Pa.Super. 280, 450 A.2d 681, 687 (1982) ("However, appellants did not object to the lower court considering the documents.... Their argument is therefore waived."), *abrogated on other grounds, Daley v. A.W. Chesterton,* 971 A.2d 1258, 1262 (Pa.Super.2009). Because Ginkel did not object to the trial court's consideration of Sokalski's expert report while the motion for summary judgment was pending, the argument has not been preserved for appellate review.

3. Whether the trial court erred in making factual determinations concerning findings and opinions of [Thompson's] expert [Sokalski] concerning danger presented by the diameter disparity between the at issue fireworks shells and the mortar tubes from which those shells were to be launched?

4. Whether the trial court failed to view the evidence concerning the at issue fireworks production in a light most favorable to [Thompson]?

5. Whether the trial court erred in granting [Ginkel's] Motion for Summary Judgment?

Thompson's Brief at 4.

■■■ Our standard of review with respect to a trial court's decision to grant or deny a motion for summary judgment is as follows:

A reviewing court may disturb the order of the trial court only where it is established that the court committed an error of law or abused its discretion. As with all questions of law, our review is plenary.

In evaluating the trial court's decision to enter summary judgment, we focus on the legal standard articulated in the summary judgment rule. Pa.R.C.P. 1035.2. The rule states that where there is no genuine issue of material fact and the moving party is entitled to relief as a matter of law, summary judgment may be entered. Where the non-moving party bears the burden of proof on an issue, he may not merely rely on his pleadings or answers in order to survive summary judgment. Failure of a non[-]moving party to adduce sufficient evidence on an issue essential to his case and on which it bears the burden of proof establishes the entitlement of the moving party to judgment as a matter of law. Lastly, we will view the record in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party.

*JP Morgan Chase Bank, N.A. v. Murray,* 63 A.3d 1258, 1261–62 (Pa.Super.2013) (quoting *Murphy v. Duquesne Univ. of the Holy Ghost,* 565 Pa. 571, 777 A.2d 418, 429 (2001)).

■ We begin with the trial court's findings of fact that "no reasonable mind could disagree that a 3 inch shell from a 3 inch tube injured [Thompson]" and that "[a]ll of the evidence in the record points to the fact that [Thompson] was injured by a 3 inch shell coming out of a 3 inch tube." Trial Court Opinion, 8/7/2013, at 10. Based upon our review, we cannot agree that these findings are supported by the summary judgment record.

■■ The testimony of the participants at the scene is equivocal. Thompson testified that Ginkel and Boedecker told him after the accident that he was injured by the last shell of the main event. Thompson Dep. at 91–92. Thompson also testified, however, that his own memory of events was blurred because he was "in and out of consciousness" after the shell that injured him exploded.[3] *Id.* ("I tried to

---

3. Thompson alleged in paragraph 14 of his Complaint that he was injured by a "3–inch magnum mortar fireworks shell." Complaint, 6/24/2010, at ¶ 14. Generally speaking, averments of fact in pleadings are considered judicial admissions that are binding on the party. *Cogley v. Duncan,* 32 A.3d 1288, 1291 (Pa.Super.2011). To constitute a judicial admission, however, it must be a clear and unequivocal admission of fact, and when there is an uncertainty surrounding a conceded fact, "it is the role of the judge or the jury as fact finder to determine which facts have been adequately proved and which must

crawl out of there, and it was—it went off. That's—I do know the shell went off. And I remember, next thing, just kind of—I heard a bunch of shells going off then. And next thing I know, I'm getting loaded in a helicopter."). In contrast, Ginkel initially testified that the shell that injured Thompson was not a reload and did not occur during the main event. Ginkel Dep. at 68–69. After these answers, however, Ginkel refused to answer any further questions regarding the timing of the accident, consistently responding with "I can't answer that question" to all subsequent inquiries. *Id.* at 69–72.

In his expert report, Sokalski reviews other evidence in the summary judgment record regarding the timing of the accident (and thus the size of the shell that injured Thompson). Based upon his review of documents obtained in discovery (including the purchase order for the mortar shells used at the display), deposition testimony, and medical records, Sokalski determined that Thompson was injured by the "low break" of a 2.5″ shell during the grand finale and opined, within a reasonable degree of engineering certainty, that the "low break" occurred because Ginkel used 2.5″ shells in 3″ tubes during the grand finale. Plaintiff's Brief in Opposition to Defendant Ginkel's Motion for Summary Judgment, Exhibit D, at 6–7 (the use of 2.5″ diameter shells in 3″ tubes

was a "significant contributing cause" of the "low break" shell resulting in injury). In this regard, Sokalski pointed out that since Ginkel lit the shells during the main event every 30 to 40 seconds, Ginkel would "surely have seen the individually-set-off shell misfire, hit, and injure Mr. Thompson," and thus he would have stopped to assist Thompson rather than proceeding to light the grand finale. *Id.* at 6.

■■■■ For these reasons, we conclude that the trial court erred in its determination that no genuine issue of material fact exists regarding whether Thompson was injured by a 2.5″ or a 3″ diameter shell. As a result, we likewise conclude that the trial court also erred in its rejection of Sokalski's expert report. In *Summers v. Certainteed Corp.*, 606 Pa. 294, 997 A.2d 1152 (2010), our Supreme Court set forth the following standard of review regarding consideration of expert testimony when deciding a motion for summary judgment:

> It has long been Pennsylvania law that, while conclusions recorded by experts may be disputed, the credibility and weight attributed to those conclusions are not proper considerations at summary judgment; rather, such determinations reside in the sole province of the trier of fact, here, a jury. *Miller v. Brass Rail Tavern, Inc.*, 541 Pa. 474,

be rejected." *John B. Conomos, Inc. v. Sun Co.*, 831 A.2d 696, 712–13 (Pa.Super.2003).

For the reasons set forth herein, there is considerable uncertainty surrounding the size of the shell that resulted in injury to Thompson. Among other things, at the time of the filing of the Complaint, Thompson probably did not know that Ginkel purchased both 3″ and 2.5″ diameter shells for the fireworks display at issue, as the purchase order was apparently produced during discovery. There is also no evidence of record that Thompson was aware of the apparent significance of the use of a smaller shell in a larger tube (per Sokalski's expert report). Finally, as indicated, the de-

position testimony of both Thompson and Ginkel is equivocal on the size of the shell that resulted in Thompson's injury. For these reasons, we cannot conclude as a matter of law that the allegation in paragraph 14 of Thompson's Complaint constitutes a judicial admission. We note that while Ginkel makes reference to this allegation in his appellate brief, he does not contend that it is a judicial admission binding on Thompson. Furthermore, Ginkel did not raise the issue of judicial admissions in the trial court below, and the trial court did not address this issue in its Rule 1925(a) written opinion (with respect to paragraph 14 or otherwise).

664 A.2d 525, 528 (1995); *In re Estate of Hunter*, 416 Pa. 127, 205 A.2d 97, 102 (1964) ('The credibility of witnesses, professional or lay, and the weight to be given to their testimony is strictly within the proper province of the trier of fact.'). Accordingly, trial judges are required 'to pay deference to the conclusions of those who are in the best position to evaluate the merits of scientific theory and technique when ruling on the admissibility of scientific proof.' *Grady v. Frito–Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1045 (2003) (citing *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923)).

At the summary judgment stage, a trial court is required to take all facts of record, and all reasonable inferences therefrom, in a light most favorable to the non-moving party. *Toy v. Metro. Life Ins. Co.* [593 Pa. 20], 928 A.2d 186, 195 (2007). This clearly includes expert testimony and reports submitted by the nonmoving party or provided during discovery; and, so long as the conclusions contained within those reports are sufficiently supported, the trial judge cannot *sua sponte* assail them in an order and opinion granting summary judgment. Contrarily, the trial judge must defer to those conclusions, *see Grady, Frye;* and should those conclusions be disputed, resolution of that dispute must be left to the trier of fact. *Miller*, 664 A.2d at 528.

*Summers*, 997 A.2d at 1161. Because an issue of material fact exists with respect to whether Thompson was injured during the main event by a 3″ diameter shell or by a 2.5″ diameter shell during the grand finale, and because the conclusions set forth in Sokalski's expert report are adequately supported by the summary judgment record, it was not within the trial court's province to give it no weight in granting summary judgment to Ginkel. The adequacy of Sokalski's expert report must be left to the jury. *Wright v. Eastman*, 63 A.3d 281, 292 (Pa.Super.2013).

▮▮▮ Finally, we conclude that the trial court erred in granting summary judgment based upon application of the assumption of the risk doctrine. In *dicta* in the case of *Hughes v. Seven Springs Farm, Inc.*, 563 Pa. 501, 762 A.2d 339 (2000),[4] our Supreme Court indicated that "[a]s a general rule, the doctrine of assumption of the risk, with its attendant 'complexities' and 'difficulties,' has been supplanted by the Pennsylvania General Assembly's adoption of a system of recovery based on comparative fault in the Comparative Negligence Act, 42 Pa.C.S. § 7102(a)-(b)." *Id.* at 341 (citing *Howell v. Clyde*, 533 Pa. 151, 620 A.2d 1107 (1993)).

▮▮▮ The *Howell* case was a non-binding plurality opinion, however, and as late as 2009, this Court has continued to apply the assumption of the risk doctrine, albeit while acknowledging that its "continuing vitality ... remains in doubt." *Zeidman v. Fisher*, 980 A.2d 637, 640 (Pa.Super.2009). In a subsequent case, *Montagazzi v. Crisci*, 994 A.2d 626 (Pa.Super.2010), we indicated that the assumption of the risk doctrine is a "function of the duty analysis" required in any negligence action, citing to the following passage in *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120 (1983):

> Appellee misperceives the relationship between the assumption-of-risk doctrine

---

4. In *Hughes,* the Supreme Court addressed the applicability of the Pennsylvania Skier's Responsibility Act, 42 Pa.C.S.A. § 7102, which preserves the doctrine of assumption of the risk in cases involving downhill skiing injuries. As a result, in *Hughes* the issue of the continued viability of the assumption of the risk doctrine generally, *i.e.,* outside the context of downhill skiing injuries, was not before the Supreme Court.

and the rule that a possessor of land is not liable to his invitees for obvious dangers. When an invitee enters business premises, discovers dangerous conditions which are both obvious and avoidable, and nevertheless proceeds voluntarily to encounter them, the doctrine of assumption of risk operates merely as a counterpart to the possessor's lack of duty to protect the invitee from those risks.

*Montagazzi,* 994 A.2d at 636 (quoting *Carrender,* 469 A.2d at 125).

 Under this formulation of the doctrine, a person relieves another of any duty to alleviate dangers when he voluntarily proceeds "to encounter a known or obvious danger." *Carrender,* 469 A.2d at 125. Accordingly, in *Montagazzi* we reiterated that "the question of assumption of the risk typically remains for the jury," and that "only where the evidence reveals a scenario so clear as to void all questions of material fact concerning the plaintiff's own conduct can the court enter summary judgment." *Montagazzi,* 994 A.2d at 636.

In the present case, it is for the jury to decide whether Thompson voluntarily assumed a known or obvious danger. It is true, as the trial court recognized, that Thompson had prior experience and training in the use of fireworks and had an understanding of the dangers associated with this activity, including the risk of potentially harmful "low breaks." Trial Court Opinion, 8/7/2013, at 9–10. It is Thompson's position, however, that while he was aware of the general risks associated with the use of fireworks, he was unaware of Ginkel's negligent use of 2.5″ shells in 3″ tubes, which (according to Sokalski's expert report) substantially increased the risks of "low breaks" at the event in question. Thompson's Brief at 14–15. According to Thompson, he did not assume the amplified risks of a greater than normal probability of "low breaks" resulting from Ginkel's alleged negligence. *Id.* at 15–16. In our view, it is for the jury to decide whether Ginkel was negligent, whether his alleged negligence increased the probability of "low breaks," and, if so, whether Thompson assumed the greater risk of the increased probability of danger.

It is also for the jury to decide whether Thompson's decision to remain close to the staging area after observing other "low breaks" in the same fireworks display reflected his assumption of the risk of subsequent "low breaks." In this regard, we note that Thompson testified that the prior "low breaks" he observed were different from the one that injured him, as the previous "low breaks" were not the sort of "ground level low breaking" shells like the one that injured him, but rather were merely shells that only traveled "maybe 60 feet in the air" and did not result in damage or harm to anyone. Thompson Dep. at 89–90. In addition, while Thompson testified that he was moving forward towards the staging area at the time of his injury in response to hearing Boedecker yell "broke rack," he indicated that his decision to do so had nothing to do with "low breaks." *Id.* at 97–98. Instead, he stated that he did so because he was concerned that a broken rack of tubes could result in injuries to other people. *Id.* at 98. The summary judgment record contains no clear evidence that Thompson was aware that his approach towards the staging area increased the risk that he would be injured by the sort of "low break" he in fact experienced. Again, this is a question for the jury to decide.

For these reasons, we conclude that genuine issues of material fact remain for a jury's determination. Accordingly, we reverse the trial court's grant of summary judgment and remand the case for trial.

Order reversed. Case remanded for trial. Jurisdiction relinquished. Judgment Entered.